Larry GRZYB, Tim Maloney, John Marks, and Ashland Hospital Corporation, d/b/a King's Daughters" Hospital, Movants,

v.

William EVANS, Respondent.

Supreme Court of Kentucky.

Oct. 31, 1985.

As Corrected Nov. 1, 1985.

As Modified on Denial of Rehearing Dec. 19, 1985.

William H. Jones, Jr., Carl D. Edwards, Jr., John I. Hanbury, Ashland, William P.

Curlin, Jr., Hazelrigg & Cox, Frankfort, for movants.

C.B. Creech, Paul T. Allen, Jr., Creech, Curtis & Justice, Ashland, for respondent.

LEIBSON, Justice.

Respondent, William Evans, filed suit against the King's Daughters' Hospital of Ashland, Kentucky, its President, Vice-President, and Plant Operator (who will be referred to herein collectively as "the hospital") alleging that Evans was wrongfully discharged from his position as Director of Housekeeping and Laundry because he had fraternized with a female hospital employee.

The gravamen of the complaint was set out in paragraphs 16 and 17. In paragraph 16 Evans alleged that his employment was terminated "maliciously, in bad faith, and as a retaliatory measure for plaintiff's conversing with a female friend of Defendant Maloney." Evans further alleges "[t]he discharge constituted a breach of defendant King's Daughters' Hospital's implied contractual duty to exercise good faith and fair dealing in terminating an at-will employee."

In paragraph 17 Evans alleges that "[p]laintiff's discharge was, in fact, discriminatory and constituted an abuse of the managerial authority ... in terminating plaintiff's employment because of conversation with said female employee, when the female employee was not so discharged."

The Hospital responded to the complaint with a Rule 12 motion to dismiss for failure to state a claim upon which relief could be granted. CR 12.02. The trial court sustained the motion, following the criteria for deciding whether a cause of action for wrongful discharge has been stated as set out in *Firestone Textile Co. Div. v. Meadows*, Ky., 666 S.W.2d 730 (1984). The Court of Appeals reversed. We accepted discretionary review because it is evident from the Court of Appeals' decision in this case and in *Brown v. Physicians Mutual Ins. Co.*, Ky.App., 679 S.W.2d 836 (1984) (where no discretionary review was sought) that there is some misunderstanding of the meaning of our decision in *Firestone Textile Co. Div. v. Meadows, supra.*

As we stated in *Firestone Textile Co. Div. v. Meadows:*

"[O]rdinarily an employer may discharge his at-will employee for good cause, for no cause, or for a cause that some might view as morally indefensible (cases cited)." 666 S.W.2d at 731.

This is the "terminable-at-will" doctrine, a longstanding corollary to mutuality of contract. *Firestone* provides a narrowly defined exception to the "terminable-at-will" doctrine, and articulates the elements that trigger the exception.

In this case and in *Brown v. Physicians Mutual Ins. Co., supra,* the Court of Appeals impermissibly extends the limitations set out in *Firestone Textile Co. Div. v. Meadows,* making it necessary for us to restate the parameters of that opinion and to provide an appropriate caveat.

*Firestone Textile Co. Div. v. Meadows* recognized a "cause of action for retaliatory discharge when the discharge is motivated by the desire to punish the employee for seeking [workers' compensation] benefits to which he is entitled by law." 666 S.W.2d at 734. We stated that without this exception, "a most important public policy will be undermined," viz., "that injured employees shall receive, and employers shall be obligated to pay" worker's compensation benefits, and "[i]njured employees should not become public charges." 666 S.W.2d at 733.

Using like reasoning we reached a similar result in an earlier case, *Pari-Mutuel Clerks' Union v. Ky. Jockey Club*, Ky., 551 S.W.2d 801 (1977). We recognized a cause of action for wrongful discharge where the worker claimed he was discharged because he authorized a labor union to represent him for purposes of collective bargaining.

Both cases involved public policy which was clearly defined by statute and directed at providing statutory protection to the worker in his employment situation.

Our decision in the *Firestone* case was not a new frontier. It was part of the mainstream of American law flowing from similar cases from sister states where employees were discharged for filing workmen's compensation claims. *See Firestone Textile Co. Div. v. Meadows, supra* at 733.

The limitations to the wrongful discharge exception to the terminable-at-will doctrine are carefully set out in *Firestone.* We state: "[e]mployers as a group have a legitimate interest to protect" which requires that "the cause of action for wrongful discharge [be] clearly defined and suitably controlled." *Id.*

We embraced *Brockmeyer v. Dun & Bradstreet,* 113 Wis.2d 561, 335 N.W.2d 834 (1983), to establish the limitations on "any judicial exceptions to the employment-at-will doctrine." 335 N.W.2d at 835. They are:

1) The discharge must be contrary to a fundamental and well-defined public policy as evidenced by existing law.

2) That policy must be evidenced by a constitutional or statutory provision.

3) The decision of whether the public policy asserted meets these criteria is a question of law for the court to decide, not a question of fact.

▪ In the present case the respondent insists that his complaint sufficiently articulates elements of sex discrimination as to qualify under the *Firestone* exception. If so, the complaint states the claim in an inartful and incomplete way which would hardly suffice to withstand a Rule 12 motion to dismiss. However, our decision should not, and does not, turn on whether the complaint could be amended to better state the cause of action. Assuming it was sufficiently alleged, the claim of sex discrimination would not qualify as providing the necessary underpinning for a wrongful discharge suit because the same statute that enunciates the public policy prohibiting employment discrimination because of "sex" also provides the structure for pursuing a claim for discriminatory acts in contravention of its terms. *See* KRS Chapter 344, Civil Rights.

▪ KRS 344.040 provides that it is "unlawful practice for an employer ... to discharge any individual ... because of such individual's race, color, religion, national origin, sex, or age between forty (40) and seventy (70)." The Kentucky Commission on Human Rights is structured in KRS Chapter 344 to adjudicate complaints of discrimination on these grounds. Thus, the same statute which would provide the necessary underpinning for a wrongful discharge suit where there is sufficient evidence to prove sex discrimination in employment practices also structures the remedy. The statute not only creates the public policy but preempts the field of its application.

▪ Under KRS 446.070, a person injured by the violation of any statute may recover from the offender such damages as he sustained by reason of the violation. But this is limited to where the statute is penal in nature, or where by its terms the statute does not prescribe the remedy for its violation. *Hackney v. Fordson Coal Co.,* 230 Ky. 362, 19 S.W.2d 989 (1929). Where the statute both declares the unlawful act and specifies the civil remedy available to the aggrieved party, the aggrieved party is limited to the remedy provided by the statute. *See Trembath v. St. Regis Paper Co.,* 753 F.2d 603 (7th Cir.1985); *Wolk v. Saks Fifth Avenue, Inc.,* 728 F.2d 221 (3d Cir.1984); *Zywicki v. Moxness Products, Inc., Div. of Versa Tech.,* 610 F.Supp. 50 (D.C.Wis.1985); *McCluney v. Jos. Schlitz Brewing Co.,* 489 F.Supp. 24 (E.D.Wis.1980).

We have also been asked to consider the notion, rejected in circuit court, that a "freedom of association doctrine" gave the plaintiff a cause of action because he was terminated for associating with another employee.

As was the case with the claim of sex discrimination, this part of respondent's complaint also lacked even a passing reference to any specific constitutional or statu-

tory provisions upon which Evans might base a claim.

■ The First Amendment guarantee of freedom of association only proscribes governmental transgressions. U.S. Const., Amend. I. The First Amendment provides that "Congress shall make no law," not that "employers shall make no work rule" respecting the freedom of association. U.S. Const. Amendment I. Similarly, the protections afforded Kentucky citizens under Kentucky Constitution Section I are against transgressions of government and lawmaking bodies. Thus, although the Court of Appeals made reference to Evans' "constitutionally protected rights of personal liberty," the constitutional protection of freedom of association does not limit the employer's right to discharge an employee. Evans' contention to the contrary has been effectively rejected by the United States Supreme Court in its recent decision in *United Brotherhood of Carpenters and Joiners of America, Local 610, AFL–CIO v. Scott*, 463 U.S. 825, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983). The First and Fourteenth Amendments do not, per se, provide a cause of action against employers for wrongful discharge.

■ We adopt, as an appropriate caveat to our decision in *Firestone Textile Co. Div. v. Meadows, supra,* the position of the Michigan Supreme Court in *Suchodolski v. Michigan Consolidated Gas Co.,* 412 Mich. 692, 316 N.W.2d 710 (1982). The Michigan court held that only two situations exist where "grounds for discharging an employee are so contrary to public policy as to be actionable" absent "explicit legislative statements prohibiting the discharge." 316 N.W.2d at 711. First, "where the alleged reason for the discharge of the employee was the failure or refusal to violate a law in the course of employment." Second, "when the reason for a discharge was the employee's exercise of a right conferred by well-established legislative enactment." 316 N.W.2d at 711–12. Here the concept of an employment-related nexus is critical to the creation of a "clearly defined" and "suitably controlled" cause of action for

wrongful discharge. These are the limitations imposed by *Firestone Textile · Co. Div. v. Meadows, supra* at 733.

The trial court correctly decided that the complaint failed to state a cause of action. The decision by the Court of Appeals is reversed, and the case dismissed.

All concur.