RENDERED: APRIL 18, 2019
TO BE PUBLISHED

# Supreme Court of Kentucky

2017-SC-000518-DG

CAROL GREISSMAN                                                          APPELLANT

ON REVIEW FROM COURT OF APPEALS
V.            CASE NOS. 2016-CA-000055 AND 2016-CA-000062
OLDHAM CIRCUIT COURT NO. 12-CI-00744

RAWLINGS AND ASSOCIATES, PLLC                                          APPELLEE

**OPINION OF THE COURT BY JUSTICE VANMETER**

**AFFIRMING**

Absent an employment contract, Kentucky adheres to the doctrine of employment-at-will by which an employer may terminate an employee's employment for any or no reason. An exception to this rule exists when the termination violates public policy as expressed by the employee's exercise of a constitutional or statutory right, which may give rise to an action for wrongful termination. In this case, Carol Greissman, a licensed attorney in Kentucky, was terminated by Rawlings and Associates, PLLC (hereinafter, "Rawlings & Associates") for refusing to sign an agreement providing, *inter alia*, for non-solicitation of Rawlings & Associates' customers or clients following cessation of employment. Greissman's refusal was based on her belief that the provision violated a Rule of Professional Conduct prohibiting non-competition

agreements between lawyers and law firms. SCR[1] 3.130, Rule 5.6. The primary issue we must resolve in this case is whether the Court of Appeals erred in opining that the Rules of the Kentucky Supreme Court do not establish public policy which in turn may form a basis for a wrongful termination claim. We hold that the Court of Appeals erred in holding that Greissman's complaint should have been dismissed for failure to state a claim, but nonetheless affirm on other grounds. The Oldham Circuit Court properly granted summary judgment in favor of Rawlings & Associates since the agreement at issue contained a savings clause which excepted the solicitation of legal work from coverage "to the extent necessary to comply with rules of professional responsibility applicable to attorneys." Thus, we agree with the circuit court that the agreement furnished to Greissman for signature did not violate SCR 3.130, Rule 5.6 as a matter of law.

## I. Factual and Procedural Background.

Rawlings & Associates, a law firm that practices in the area of health care subrogation, employed Greissman as a subrogation analyst from June 1997 through September 21, 2011, when it terminated her employment.[2] The event that led to termination of her employment was that Rawlings &

---

[1] Kentucky Rules of the Supreme Court.

[2] Rawlings & Associates is one of three companies that make up The Rawlings Group. The other two companies include The Rawlings Company, LLC and Rawlings Financial Services, LLC. Multiple versions of the Confidentiality and Non-Solicitation Agreement were created for distribution: one for The Rawlings Company, one for Rawlings Financial, and two separate agreements for Rawlings & Associates – one for its non-attorney employees and one for its attorney employees.

Associates presented Greissman, as well as to its other employees, an agreement that included a covenant not to solicit, contact, interfere with, or attempt to divert any of Rawlings & Associates' customers or potential customers after ceasing employment with Rawlings & Associates.[3] The version of the agreement presented to the attorneys was the same as the non-attorney version, except in the attorney version the non-solicitation paragraph was preceded by a "savings clause" exempting the solicitation of legal work from coverage under the non-solicitation clause. The agreements were distributed to all Rawlings Group employees, who were given time to review and sign. After consulting with her personal attorney, Greissman refused to sign the attorney version of the agreement, due to her belief that its terms violated SCR 3.310, Rule 5.6, which prohibits an attorney from agreeing to restrict his or her practice after leaving an employer, with limited exceptions. Rawlings & Associates thereafter terminated Greissman's employment.

Greissman filed suit against Rawlings & Associates alleging she had been wrongfully terminated in violation of public policy and sought damages and restoration of her former position. In lieu of an answer, Rawlings & Associates filed a motion to dismiss on grounds that SCR 3.130, Rule 5.6 was not a public policy embodied in a statutory or constitutional provision and therefore, under *Grzyb v. Evans*, 700 S.W.2d 399, 401 (Ky. 1985), Greissman's complaint failed to state a claim upon which relief could be granted. The circuit court denied

---

[3] The agreement also included provisions relating to non-disclosure of confidential information and non-solicitation of non-legal business.

3

Rawlings & Associates' motion to dismiss and held that an obligatory Rule of Professional Conduct, as established by the Kentucky Supreme Court, falls within the public policy exception for purposes of a wrongful termination claim and that Greissman's cause of action could proceed.

Rawlings & Associates filed an answer to Greissman's complaint and discovery ensued. Greissman filed a motion for partial summary judgment on the issue of liability, arguing that the savings clause in the agreement did not cure the violation of the Rules and that her good faith, reasonable belief that a violation occurred was enough to save her wrongful termination claim; she did not need to prove an actual violation. In turn, Rawlings & Associates sought dismissal of Greissman's complaint on summary judgment grounds, asserting that the savings clause in the non-solicitation section removed the agreement from the purview of SCR 3.130, Rule 5.6 since the agreement only restricted disclosure of confidential information and the solicitation of non-legal business; it did not restrict an attorney's ability to practice law. Rawlings & Associates also argued that no public policy exception exists upon which Greissman could base her claim for wrongful termination since she failed to allege a constitutional or statutory violation.

The circuit court, while recognizing Greissman's claim as cognizable, nonetheless held that the agreement did not violate the Rules of Professional Conduct since the savings clause would have protected Greissman from any violation of the Rules had she signed it. Furthermore, the circuit court determined that Greissman's belief that the agreement violated the Rules of

4

Professional Conduct was insufficient to rescue her wrongful termination claim. Accordingly, the circuit court denied Greissman's motion for partial summary judgment and granted summary judgment in favor of Rawlings & Associates.

Greissman appealed that decision and Rawlings & Associates cross-appealed from the circuit court's earlier order denying its motion to dismiss. The Court of Appeals upheld the circuit court's ultimate decision dismissing Greissman's complaint, but ruled that SCR 3.310, Rule 5.6 did not provide the public policy to support Greissman's wrongful termination claim and thus the circuit court should have granted Rawlings & Associates' motion to dismiss. Greissman petitioned this Court for discretionary review, which we granted.

## II.  Standard of Review.

We review a circuit court's ruling on a motion to dismiss and a motion for summary judgment de novo, owing no deference to the circuit court on a question of law. *Fox v. Grayson*, 317 S.W.3d 1, 7 (Ky. 2010); *Blackstone Mining Co. v. Travelers Ins. Co.*, 351 S.W.3d 193, 198 (Ky. 2010).

## III.  Analysis.

The agreement furnished by Rawlings & Associates to Greissman provides in relevant part as follows:

> Non-Solicitation. *Except to the extent necessary to comply with the rules of professional responsibility applicable to attorneys,* I agree that for as long as I am employed and for three (3) years following termination of my employment, for any reason, I will not, without the prior written consent of Rawlings & Associates: (i) solicit, contact, interfere with, or attempt to divert any customer served by Rawlings & Associates, or any potential customer (defined as a prospective customer who was solicited by Rawlings & Associates

5

within 5 years); or (ii) solicit any person then or previously employed by Rawlings & Associates to join me, whether as a partner, agent, employee, or otherwise, in any enterprise engaged in a business that competes with business engaged in by Rawlings & Associates at the time my employment ceases.

(emphasis added).

Greissman's refusal to sign the agreement was based on her belief that it violated SCR 3.130, Rule 5.6, an obligatory rule which prohibits an attorney from restricting her right to practice after leaving an employer, with some exceptions. Rule 5.6 states:

A lawyer *shall not* participate in offering or making:

(a) a partnership or, shareholders, operating, employment, or other similar type of agreement that restricts the right of a lawyer to practice after termination of the relationship, except an agreement concerning benefits upon retirement; or

(b) an agreement in which a restriction on the lawyer's right to practice is part of the settlement of a client controversy.

(emphasis added).

Pursuant to Kentucky's terminable-at-will doctrine, ordinarily an employer may discharge an at-will employee "'for good cause, for no cause, or for a cause that some might view as morally indefensible'" as long as the employee was not terminated for an unlawful reason "'in contravention of statutory or constitutional provisions.'" *Asbury Univ. v. Powell*, 486 S.W.3d 246, 262 (Ky. 2016) (quoting *Wymer v. JH Properties, Inc.*, 50 S.W.3d 195, 198 (Ky. 2001)). Kentucky recognizes a narrow public-policy exception to the terminable-at-will doctrine. To establish a cause of action for wrongful discharge, an employee must show that the termination was contrary to public

policy evinced by a constitutional or statutory provision, or that the discharge directly resulted from the employee's refusal to violate the law during the course of his employment. *Grzyb*, 700 S.W.2d at 401; *Firestone Textile Co. Div. v. Meadows*, 666 S.W.2d 730, 733 (Ky. 1983).

This Court has summarized the public policy exceptions to the employment-at-will doctrine as follows:

1) The discharge must be contrary to a fundamental and well-defined public policy as evidenced by existing law.

2) That policy must be evidenced by a constitutional or statutory provision.

3) The decision of whether the public policy asserted meets these criteria is a question of law for the court to decide, not a question of fact.

*Grzyb*, 700 S.W.2d at 401. The *Grzyb* court recognized two situations in which "grounds for discharging an employee are so contrary to public policy as to be actionable absent explicit legislative statements prohibiting the discharge." *Id.* at 402 (citation omitted). Those two situations include "where the alleged reason for the discharge of the employee was the failure or refusal to violate a law in the course of employment. . . . [and] when the reason for a discharge was the employee's exercise of a right conferred by well-established legislative enactment." *Id.* (citation omitted).

When an employee exercises a constitutional or statutory right which leads to his termination from employment, the exercised right must have "an employment-related nexus" for a wrongful discharge claim to lie. *Id.* In other words, "important to a finding of wrongful discharge is the requirement that

7

the public policy must be defined by statute and directed at providing statutory protection to the worker in his employment situation." *Shrout v. TFE Grp.,* 161 S.W.3d 351, 354 (Ky. App. 2005) (dismissing wrongful discharge claim because federal, not state, regulation was at issue and because federal regulation concerned employee drug testing that was aimed primarily at ensuring passenger safety rather than protecting employees).

The Court of Appeals in the case at bar concluded that since SCR 3.130, Rule 5.6 was not a constitutional or statutory mandate, Greissman had no public policy violation upon which to base her wrongful termination claim. This conclusion, however, ignores the unique area of attorney disciplinary matters, and the fact that this field is wholly regulated by the judicial branch.

Section 116 of the Kentucky Constitution vests the Kentucky Supreme Court with exclusive rule-making power regarding attorney discipline. The legislature has no authority to enact statutes in this area; that responsibility lies with the judicial branch alone. As a result, the Supreme Court Rules are the sole source of public policy in this area. In this respect, for purposes of wrongful termination actions, we believe that an obligatory Rule of Professional Conduct for attorneys carries equal public policy weight as any public policy set forth in our Constitution or in a statute enacted by the General Assembly. *See Martello v. Santana,* 874 F. Supp. 2d 658, 670 (E.D. Ky. 2012) ("to simply dismiss the Rules of Professional Conduct as unequal to statutes of general application fails to recognize that the power to regulate attorney discipline constitutionally lies solely with the Supreme Court of Kentucky. . . . the

8

Kentucky Supreme Court, through its rule-making powers and oversight of the Kentucky Bar Association, sets the public policy in dealings between lawyers and non-lawyers[]");[4] *see also Giuliani v. Guiler*, 951 S.W.2d 318, 321 (Ky. 1997) ("It is beyond challenge that public policy is determined by the constitution and the legislature through the enactment of statutes. However, when those organs of public policy are silent, the decision can be made by the courts[]"). As the circuit court below aptly observed, "[c]ertainly it would be counterintuitive to require lawyers to conform their conduct to the obligatory sections of the Rules [of Professional Conduct] then to turn around and dismiss a claim that they were discharged for refusal to violate an obligatory rule."

While an obligatory Rule of Professional Conduct as enacted by the Kentucky Supreme Court may qualify as public policy for purposes of a wrongful discharge claim, the professional rule must be designed to serve the interests of the public at large, rather than the sole interests of the profession. Here, SCR 3.130, Rule 5.6 is designed to protect society at large by allowing clients to freely choose counsel who can best represent their interests and by not limiting an attorney's right to practice law. We believe the rule represents a fundamental and clear statement of public policy.

---

[4] *But see Gadlage v. Winters & Yonker, Attorneys at Law, P.S.C.*, No. 3:11-CV-354-H, 2011 WL 6888538, at *2 (W.D. Ky. Dec. 29, 2011) ("the source of the Kentucky Supreme Court's authority to establish rules does not transform those rules into the equivalent of a constitutional or statutory provision. . . . In Kentucky, a public policy from a court rule is insufficient to support a wrongful discharge claim[]").

While we disagree with the Court of Appeals' decision that Greissman's complaint should have been dismissed for failure to state a claim, we nevertheless affirm because we agree with the circuit court's grant of summary judgment in favor of Rawlings & Associates.[5] On its face, the savings clause applies only to restrict Greissman's ability to solicit non-legal business; it exempts the solicitation of legal work from coverage under the non-solicitation clause, expressly noting that the signor does not agree to those terms to the "extent necessary to comply with the rules of professional responsibility applicable to attorneys." Unambiguously, the signor agrees not to solicit Rawlings' non-legal business; the savings clause does not apply to the solicitation of legal work since that would violate the Rules of Professional Conduct. Indeed, the savings clause expressly recognizes that the Rules of Professional Conduct govern if any conflict exists between them and the agreement. Since the plain language of the savings clause excludes any interpretation of the agreement that conflicts with the Rules of Professional Conduct, the agreement did not violate SCR 3.130, Rule 5.6.[6]

Lastly, Greissman has not created a genuine issue of material fact about whether she had a reasonable, good faith belief that signing the agreement

---

[5] The Court of Appeals' majority opinion did not reach the issue of whether summary judgment was proper since it held that the complaint should have been dismissed for failure to state a claim.

[6] Had Greissman signed an agreement restraining her ability to practice, she would have been subject to professional sanctions. Similarly, Rawlings & Associates, as a law firm, would also have been subject to discipline had it required its employees who are attorneys to agree to restrict their right to practice after termination of the employment relationship.

10

would result in a rule violation. As stated above, the unambiguous savings clause makes clear that the requested conduct – signing the agreement – would not have resulted in a rule violation. Furthermore, we note that Greissman had ample time to consult the KBA Ethics Hotline for an advisory opinion as to whether signing the agreement would violate Rule 5.6. If she had done so, the opinion she received most likely would have protected her from any discipline. KBA members

> may obtain personal advice about their own contemplated future conduct by means of an informal ethics opinion. The KBA has established an Ethics Hotline staffed with trained volunteers in each Supreme Court District. These volunteers work under the direction of the Ethics Committee and are authorized to provide advice promptly upon request to members who wish to determine the ethical course to take in a situation. The informal opinion, if based upon an accurate statement of the facts, and followed, can serve as a defense to a later complaint of misconduct which arises from the same facts.

*See* Kentucky Bar Association, https://www.kybar.org/page/EthicsHotline. (last visited March 25, 2019). The KBA Ethics Hotline is a valuable resource for attorneys, and had Greissman utilized it, perhaps years of litigation and expense may have been avoided.

## IV.    Conclusion.

For the foregoing reasons, we affirm the Court of Appeals, but on different grounds.

All sitting. All concur.

11

COUNSEL FOR APPELLANT:

Alton D. Priddy
David Lindsay Leightty
Alison M. Messex
PRIDDY, CUTLER, NAAKE & MEADE, PLLC


COUNSEL FOR APPELLEE:

Jordan White
Mitzi Denise Wyrick
WYATT, TARRANT & COMBS, LLP