OPINION OF THE COURT BY JUSTICE KELLER
Appellant, Debra Marshall, appeals from an order of the Franklin County Circuit Court granting a motion to dismiss for failure to state a claim in favor of Appellee, Montaplast of North America, Inc. The Court of Appeals affirmed the circuit court. We affirm the decision of the Court of Appeals.
I. BACKGROUND
Debra Marshall began employment with Montaplast of North America, Inc. (Montaplast) on October 19, 1998. She was an at-will employee and did not have an employment contract. On January 29, 2015, Marshall accurately informed some of her coworkers that one of their supervisors was a registered sex offender. On February 3, 2015, after approximately 16 years of employment, Marshall was terminated by Montaplast. On March 20, 2015, Marshall filed a complaint in Franklin Circuit Court alleging wrongful discharge in violation of public policy. She asserted that she was terminated in retaliation for informing other workers that one of their supervisors was a registered sex offender, or at the very least that this was a substantial motivating factor in her termination. She claimed that the Kentucky Sex Offender Registration Act establishes a public policy that the sex offender registry should be open and accessible to everyone. Prior to even filing an answer, Montaplast filed a motion to dismiss the complaint under CR[1] 12.02(f) for failure to state a claim as a matter of law. Montaplast argued that even if Marshall was terminated for her conversation about the supervisor, this conversation was not protected under Kentucky public policy. The Franklin Circuit Court granted Montaplast's motion to dismiss. The Court of Appeals affirmed the Franklin Circuit Court. This Court granted discretionary review.
II. ANALYSIS
In ruling on a motion to dismiss for failure to state a claim under CR 12.02(f), the trial court should take all of the allegations in the complaint as true. Morgan v. Bird, 289 S.W.3d 222, 226 (Ky. App. 2009). "[A] court should not dismiss an action for failure to state a claim unless the pleading party appears not to be entitled to relief under any set of facts which could be proven in support of his claim." Id. The trial court is not required to make any findings of fact, and the question is purely a matter of law. Fox v. Grayson, 317 S.W.3d 1 (Ky. 2010). "Accordingly, the trial court's decision will be reviewed de novo " Morgan , 289 S.W.3d at 226.
*652 Ordinarily, an at-will employee may be discharged "for good cause, for no cause, or for a cause that some might view as morally indefensible.". Firestone Textile Co. Div. v. Meadows , 666 S.W.2d 730, 731 (Ky. 1983) (citing Production Oil Co. v. Johnson, 313 S.W.2d 411 (Ky. 1958) ; Scroghan v. Kraftco Corp., 551 S.W.2d 811 (Ky. App. 1977) ). However, there is "a narrow public policy exception" to the terminable-at-will doctrine, which is subject to the following limitations:
1) The discharge must be contrary to a fundamental and well-defined public policy as evidenced by existing law.
2) That policy must be evidenced by a constitutional or statutory provision.
3) The decision of whether the public policy asserted meets these criteria is a question of law for the court to decide, not a question of fact.
Grzyb v. Evans, 700 S.W.2d 399, 401 (Ky. 1985). See also Firestone, 666 S.W.2d at 731 (quoting Brockmeyer v. Dun & Bradstreet, 113 Wis.2d 561, 335 N.W.2d 834, 835 (1983) ). Only three circumstances exist in which a discharge will be actionable as contrary to public policy: (1) when there are "explicit legislative statements prohibiting the discharge," (2) when "the alleged reason for the discharge ... was the employee's failure or refusal to violate a law in the course of employment," or (3) when "the reason for the discharge was the employee's exercise of a right conferred by well-established legislative enactment." Hill v. Kentucky Lottery Corp., 327 S.W.3d 412, 422 (Ky. 2010) (quoting Grzyb, 700 S.W.2d at 402 ). Further, the public policy involved must have an employment-related nexus. Grzyb, 700 S.W.2d at 402.
In this case, Marshall asserts that she was terminated because of her "exercise of a right conferred by well-established legislative enactment," which was in contravention of public policy. She argues that the Sex Offender Registration Act found in KRS[2] 17.500 et seq. provides the public policy of protecting the public from registered sex offenders and sexual predators. She argues that a right to disseminate the information from the registry is evidenced by the entire Sex Offender Registration Act, but in particular by KRS 17.510 and KRS 17.580.[3] KRS 17.510(8) states, "The registration form shall be a written statement signed by the person which shall include registrant information, including an up-to-date photograph of the registrant for public dissemination " (emphasis added). KRS 17.580(4)(b) states, "Any person, including an employee of a sheriff's office, acting in good faith in disseminating, or not disseminating, information previously disseminated by the Department of Kentucky State Police shall be immune from criminal and civil liability for the dissemination or lack thereof." The question here is whether the strong public policy of protection of the public, combined with the statute's stated purpose of dissemination of registrant information and an immunity from civil and criminal liability, creates a right to disseminate this information in a private workplace, such that a termination of employment for exercising that right is contrary to public policy.
A thorough review of this Court's precedent regarding the public policy exception to the terminable-at-will doctrine is necessary for analyzing Marshall's claim. We will begin this review with the 1977 case of *653 Pari-Mutuel Clerks' Union v. Kentucky Jockey Club, 551 S.W.2d 801 (Ky. 1977). In Pari-Mutuel, an employee was terminated for authorizing a labor union to represent him for the purpose of collective bargaining. The statute at issue in that case stated in relevant part, "Employes [sic] may, free from restraint or coercion by the employers or their agents, associate collectively for self-organization and designate collectively representatives of their own choosing to negotiate the terms and conditions of their employment to effectively promote their own rights and general welfare." Id. at 801-02 n.1, (quoting KRS 336.130 ). We reversed the circuit court's granting of a motion to dismiss for failure to state a claim, thereby recognizing a cause of action based on the public policy implicit in an act of the legislature - in that case, the statute governing the rights of workers to organize for purposes of collective bargaining.
The next case this Court decided regarding the public policy exception to the terminable-at-will doctrine has become one of the seminal cases in this area of the law - Firestone. In Firestone, an employee was terminated for pursuing a workers' compensation claim against the employer. In that case, we stated that the Workers' Compensation Act evidenced "a public policy that an employee has a right to be free to assert a lawful claim for benefits without suffering retaliatory discharge." 666 S.W.2d at 732. We formally adopted a rule found in the Wisconsin case of Brockmeyer v. Dun & Bradstreet to govern the narrow public policy exception to the terminable-at-will doctrine:
(A)n employee has a cause of action for wrongful discharge when the discharge is contrary to a fundamental and well-defined public policy as evidenced by existing law.... The public policy must be evidenced by a constitutional or statutory provision. An employee cannot be fired for refusing to violate the constitution or a statute. Employers will be held liable for those terminations that effectuate an unlawful end.
Firestone at 666 S.W.2d at 731 (quoting Brockmeyer, 113 Wis.2d 561, 335 N.W.2d 834, 840 (1983) ). This limitation placed on the public policy exception continues to govern the subject.
Two years later, in Grzyb v. Evans, this Court clarified the rule laid down in Firestone . 700 S.W.2d 399 (Ky. 1985). We adopted a caveat from the Michigan Supreme Court:
[O]nly two situations exist where "grounds for discharging an employee are so contrary to public policy as to be actionable" absent "explicit legislative statements prohibiting the discharge." First, "where the alleged reason for the discharge of the employee was the failure or refusal to violate a law in the course of employment." Second, "when the reason for a discharge was the employee's exercise of a right conferred by well-established legislative enactment."
Id. at 402 (quoting Suchodolski v. Michigan Consolidated Gas Co., 412 Mich. 692, 316 N.W.2d 710 (1982) ) (internal citations omitted). Grzyb is also the first of our cases to discuss what has become known as the "employment-related nexus" requirement. In discussing Pari-Mutuel and Firestone, we stated, "Both cases involved public policy which was clearly defined by statute and directed at providing statutory protection to the worker in his employment situation." Id. at 400. We went on to state that "the concept of an employment-related nexus is critical to the creation of a 'clearly defined' and 'suitably controlled' cause of action for wrongful discharge." Id. at 402.
This Court next addressed the public policy exception to the terminable-at-will doctrine in 1992 in the case of Boykins v. Housing Authority of Louisville, 842 S.W.2d 527 (Ky. 1992). In that case we *654 reiterated the employment-related nexus requirement when we held that the "open courts" provision of the Kentucky Constitution neither evidenced a "fundamental and well-defined public policy," nor did it have anything "to do with employment rights." Id. at 530. We found that "the employer had the right to discharge an employee who brought private litigation against the employer seeking damages from an incident not related to her employment." Id.
Next, in Nelson Steel Corp. v. McDaniel, our Court declined to extend the right found in the Workers' Compensation Act to termination because an employee filed a workers' compensation claim against a previous employer. 898 S.W.2d 66 (Ky. 1995). We found that McDaniel's termination was done for economic reasons as opposed to retaliatory reasons and therefore did not fall within the narrow public policy exception found in Firestone and Grzyb . Id. at 69. We did not address the employment-related nexus requirement in that case, as the Workers' Compensation Act has a clear employment nexus.
In 2010, this Court found an adequate wrongful discharge claim was stated in Hill v. Kentucky Lottery Corp., 327 S.W.3d 412 (Ky. 2010). In that case, Hill was terminated for refusing to provide false testimony during another employee's workers' compensation hearing. We found this fell squarely within the limitations set out in Grzyb, namely, where the alleged reason for the discharge was the employee's failure or refusal to violate a law in the course of employment. Id. at 422. We did not discuss the employment-related nexus any further.
The most recent case in which we discussed the public policy exception to the terminable-at-will doctrine based on the "exercise of a right conferred by well-established legislative enactment" was Mitchell v. University of Kentucky , 366 S.W.3d 895 (Ky. 2012). Mitchell had been terminated from his employment at the University of Kentucky because he had a firearm in the glove compartment of his car while parked on campus. The University of Kentucky had a policy that prohibited possession of a deadly weapon on university property and terminated him for violating this policy. In that case, this Court found that the right to bear arms found in KRS 527.020 and KRS 237.106 created an actionable wrongful termination claim.
To understand Mitchell, it is necessary to discuss the specific statutes at issue. In relevant part, KRS 527.020(8) states, "No person or organization, public or private, shall prohibit a person from keeping a firearm or ammunition, or both, or other deadly weapon in a glove compartment of a vehicle in accordance with the provisions of this subsection." Id. at 899. KRS 527.020(4) states in relevant part, "No person or organization, public or private, shall prohibit a person licensed to carry a concealed deadly weapon from possessing a firearm, ammunition, or both, or other deadly weapon in his or her vehicle." Id. at 900. Mitchell had a license to carry a concealed deadly weapon. Finally, KRS 237.106 provides, in relevant part:
(1) No person, including but not limited to an employer, who is the owner, lessee, or occupant of real property shall prohibit any person who is legally entitled to possess a firearm from possessing a firearm, part of a firearm, ammunition, or ammunition component in a vehicle on the property.
....
(4) An employer that fires, disciplines, demotes, or otherwise punishes an employee who is lawfully exercising a right guaranteed by this section and who is engaging in conduct in compliance with this statute shall be liable in civil damages....
*655 Id. at 902. Although we were required to engage in additional statutory interpretation in Mitchell regarding competing statutes giving the University a right to restrict weapons on its campus, we found that Mitchell's right to bear arms codified in the above quoted statutes created a public policy exception to the terminable-at-will doctrine. While this Court did not discuss the employment-related nexus requirement, KRS 237.106 clearly provided "protection to the worker in his employment situation." Grzyb, 700 S.W.2d at 400.
Finally, just in April of this year, this Court rendered the decision of Greissman v. Rawlings & Associates, PLLC, 571 S.W.3d 561 (Ky. 2019). That case dealt with an attorney who was fired because she refused to sign a noncompete agreement because she believed the agreement violated the Rules of Professional Conduct that govern attorneys in the Commonwealth. That case cited to the employment-related nexus requirement but did not explicitly apply it to the facts of the case because the case dealt with a separate ground for establishing public policy - the alleged refusal to violate a law, or in that case, a Rule of Professional Responsibility, in the course of employment. Id. at 566. While we affirmed the granting of summary judgment in favor of the defendant in the case because the noncompete agreement at issue did not actually violate the Rules of Professional Conduct, we held that the Rules of Professional Conduct may establish public policy upon which a wrongful termination claim can be based. Id. at 567. In order for an obligatory Rule of Professional Conduct to "qualify as public policy for purposes of a wrongful discharge claim, the professional rule must be designed to serve the interests of the public at large, rather than the sole interests of the profession." Id. This Court held that the rule prohibiting noncompete agreements qualified as such. Id.
In reviewing our long line of precedent, this Court simply cannot find that the Sex Offender Registration Act creates a public policy exception to the terminable-at-will doctrine.
The Sex Offender Registration Act exists primarily as a mechanism to protect the public. In Hyatt v. Commonwealth, this Court clearly stated that the Sex Offender Registration Act furthers "the overwhelming public policy objective of protecting the public." 72 S.W.3d 566, 573 (Ky. 2002). In order to achieve this goal of protecting the public, the information from the sex offender registry must be publicly available and publicly disseminated. Further, the Sex Offender Registration Act provides immunity from criminal and civil liability for anyone who disseminates information from the registry in good faith. KRS 17.580(4)(b). Despite this underlying public policy and the immunity provided in the statute, in following our own precedent, this Court simply cannot find an explicit right to disseminate information from the registry in a private workplace. While it may be argued that an "overwhelming public policy" of public protection coupled with encouraging dissemination and additionally, the granting of an immunity equals a right, we simply cannot find this equation in the Act. Immunity is a shield. It frees a party from the burden of litigation. It does not create a sword or a right to engage in an act.
As a matter of principle, this Court may disapprove of the firing of an employee merely for disclosing to fellow employees information contained on the sex offender registry. We cannot, however, find the right to disclose the information in the Sex Offender Registration Act. Should members of the legislature agree with our disapproval of a termination on these grounds, it is their duty to include a right to disseminate this information in the statutes *656 themselves. The statute must make clear that it intends to protect employees in their employment situation. As much as we may wish to, this Court cannot, by judicial fiat, insert that right into the statutory scheme.
Any right that we find in the Sex Offender Registration Act is implicit and intuitive, as opposed to an explicit right related to employment as required by Grzyb. All of the statutory rights previously recognized by the Court, specifically in Pari-Mutuel , Firestone , and Mitchell, were explicitly stated in the statute by language such as "Employees may, free from restraint or coercion" and "No person, including but not limited to an employer ... shall prohibit."
The case before us today was dismissed before an answer was even filed. We know very few of the underlying facts. We do not know whether Marshall whispered to a few of her co-workers out of concern for their safety or if she shouted from the rooftop creating a disruption in the workplace. And to be clear, even if a right to disseminate information from the sex offender registry existed to prevent termination solely for that dissemination, said dissemination would need to be effectuated in a manner consistent with appropriate workplace behavior and decorum.
III. CONCLUSION
For the foregoing reasons, we affirm the Court of Appeals.
All sitting. All concur.

Kentucky Rules of Civil Procedure.

Kentucky Revised Statutes.

KRS 17.510 and 17.580 were amended in 2018. However, the analysis of Marshall's claims remains the same under both the version in effect at the time of her termination and the version currently in effect. For ease of reference, we will cite to the current version of the statutes.