RENDERED:  MARCH 29, 2024; 10:00 A.M.
NOT TO BE PUBLSIHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-0386-MR


FT. MITCHELL CONSTRUCTION,
LLC; AIRTECH LLC; AND
COLUMBIA SUSSEX
CORPORATION                                                      APPELLANTS


|   | APPEAL FROM BOONE CIRCUIT COURT |
|---|---|
| v. | HONORABLE JAMES R. SCHRAND, JUDGE |
|   | ACTION NO. 18-CI-01276 |


RAYMOND F. JUSTINIC                                              APPELLEE


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  ACREE, EASTON, AND JONES, JUDGES.

ACREE, JUDGE:  Appellants appeal the Boone Circuit Court's denial of their

renewed motion for a direct verdict pursuant to CR[1] 50.02 and their subsequent

---

[1] Kentucky Rules of Civil Procedure.

motion for a new trial pursuant to CR 59. Having considered the appeal, we affirm.

## BACKGROUND

In 2016, Appellant Airtech, LLC (Airtech) hired Appellee, Raymond Justinic, to captain a corporate jet owned by Appellant Ft. Mitchell Construction, LLC (FMC) for the benefit of Appellant Columbia Sussex Corporation (Columbia Sussex). Columbia Sussex owned the Westin Dawn Beach Resort and Spa (Westin) on the Caribbean Island of St. Maarten. On September 6, 2017, a category five hurricane, Irma, hit the island and inflicted severe damage.

The Senior Vice President of Development for Columbia Sussex, Joe Yung, told the owner of Airtech, Mark Davis, he wanted to schedule a flight to St. Maarten for insurance adjusters to inspect any damage done to their property. Additionally, Appellants also allege they wanted to fly emergency supplies to their employees at the Westin. Davis instructed Justinic to begin making preparations to fly the supplies and insurance adjusters to St. Maarten.

From September 8 to September 11, Justinic and Davis exchanged numerous text messages working out a safe plan and flight path to St. Maarten, which went through several revisions. One of the kinks involved in planning a flight to St. Maarten then was that the island's only airport was closed. It remained closed until September 12. Another impediment to the plan was a subsequent

hurricane, Jose, was entering the Caribbean from the Atlantic Ocean with a projected path similar to that of Hurricane Irma.

On September 9, Justinic loaded onto the plane certain freight Columbia Sussex wanted to transport to St. Maarten. Davis told Justinic to fly from Kentucky to Atlanta, where six passengers, including insurance adjusters, would be picked up and then flown to St. Maarten. Later that day, Columbia Sussex changed the flight plan to have Justinic fly to San Juan, Puerto Rico, which was a short flight to St. Maarten once its airport reopened. Justinic then contacted Universal Weather and Aviation, Inc. (Universal) to get assistance coordinating the proposed flight and to receive updated weather information with Hurricane Jose on the way.

After speaking with Universal, Justinic relayed a summary of those conversations to Davis and told Davis he would not be able to fly to Puerto Rico that night, and it was not likely he would be able to fly the following day. Justinic indicated the earliest the flight could take place was September 11, with a slight chance he could fly on September 10 depending on what Hurricane Jose did. Davis relayed this message to Yung and Appellants removed Justinic as the captain of the flight. On September 10, 2017, Columbia Sussex received word from St. Maarten's Minister of Justice authorizing the flight, but through Dallas. On September 20, 2017, Appellants fired Justinic.

Justinic's suit alleged wrongful termination in violation of public policy against the Appellants as joint employers.[2] The case went to trial and at the close of Justinic's evidence, Appellants moved the court for a directed verdict. The court denied the motion. At the conclusion of the trial, the jury returned a unanimous verdict for Justinic, awarding him $488,750.00 in lost wages/benefits, $202,083.33 in emotional distress damages, and $1,300,000.00 in punitive damages. Following the trial, Appellants made a renewed motion for a direct verdict pursuant to CR 50.02, or a motion for a new trial in the alternative pursuant to CR 59. The Boone Circuit Court denied both motions. This appeal follows.

## ANALYSIS

Appellants challenge the circuit court's denial of their directed verdict motion and alternative motion for a new trial. We address each in turn.

*Motion for a Directed Verdict.*

When reviewing a circuit court's denial of a directed verdict motion, "the role of an appellate court is limited to determining whether the trial court erred in failing to grant the motion for a directed verdict." *Bierman v. Klapheke*, 967 S.W.2d 16, 18 (Ky. 1998). We take "[a]ll evidence which favors the

---

[2] Generally speaking, this case began as Justinic's claim for tortious interference with a business relationship against Ft. Mitchell Construction, LLC and Columbia Sussex Corporation. In a separate action, Airtech, LLC sued Justinic who counterclaimed for wrongful termination. The cases were consolidated, Airtech dismissed its claim, and the consolidated cases proceeded and were tried primarily on Justinic's claim of wrongful termination.

-4-

prevailing party . . . as true[,] and the reviewing court is not at liberty to determine [the] credibility or the weight [of] the evidence . . . .  The prevailing party is entitled to all reasonable inferences which may be drawn from the evidence." *Id.*

We note that "[a] reviewing court is rarely in as good a position as the trial judge . . . to decide whether a jury can properly consider the evidence presented." *Id.*  Thus, we cannot substitute our own judgment for the circuit court's judgment.  Nevertheless, "a trial judge cannot enter a directed verdict unless there is a complete absence of proof on a material issue or if no disputed issues of fact exist upon which reasonable minds could differ." *Id.* at 18-19.  *See also Auslander Props., LLC v. Nalley*, 558 S.W.3d 457, 468 (Ky. 2018); *Wright v. Carroll*, 452 S.W.3d 127, 132 (Ky. 2014); *Morris v. Boerste*, 641 S.W.3d 688, 698 (Ky. App. 2022).  Finally, "[t]he decision of the trial court will stand unless it is determined that 'the verdict rendered is palpably or flagrantly against the evidence so as to indicate that it was reached as a result of passion or prejudice.'" *Indiana Ins. Co. v. Demetre*, 527 S.W.3d 12, 25 (Ky. 2017) (internal quotation marks omitted) (quoting *Lewis v. Bledsoe Surface Mining Co.*, 798 S.W.2d 459, 461 (Ky. 1990)).

Appellants contend the circuit court erred in three ways.  First, they argue KRS 183.100 is not a sufficient foundation to support a claim of wrongful termination in violation of public policy.  Second, Appellants claim Justinic could

not receive an award of emotional distress damages from the jury because his emotional distress was not sufficiently severe or serious. Finally, they argue Justinic was not entitled to punitive damages because he failed to show oppressive conduct on the Appellants' part. Each argument lacks sufficient merit to justify affecting the judgment.

Absent a contract, Kentucky employees are considered "at-will" employees. "[A]n at-will employee may be discharged 'for good cause, for no cause, or for a cause that some might view as morally indefensible.'" *Marshall v. Montaplast of North America, Inc.*, 575 S.W.3d 650, 652 (Ky. 2019) (citations omitted). This is true, "as long as [the employee] was not [terminated] for an unlawful reason . . . 'in contravention of statutory or constitutional provisions.'" *Asbury Univ. v. Powell*, 486 S.W.3d 246, 262 (Ky. 2016) (citation omitted).

Accordingly, Kentucky carved out a narrow public policy exception to the general rule and, thus, a plaintiff can establish wrongful termination in violation of public policy if that plaintiff shows the termination was contrary to public policy evinced by a constitutional or statutory provision, or that the discharge directly resulted from the employee's refusal to violate the law during the course of his employment. *Grzyb v. Evans*, 700 S.W.2d 399, 401 (Ky. 1985); *Firestone Textile Co. Div., Firestone Tire & Rubber Co. v. Meadows*, 666 S.W.2d 730, 733 (Ky. 1983). There are three criteria:

1) The discharge must be contrary to a fundamental and well-defined public policy as evidenced by existing law.

2) That policy must be evidenced by a constitutional or statutory provision.

3) The decision of whether the public policy asserted meets these criteria is a question of law for the court to decide, not a question of fact.

*Grzyb*, 700 S.W.2d at 401. And, finally, the public policy involved must have an employment-related nexus. *Id.* at 402.

Pursuant to KRS 183.100:

No person shall operate any aircraft within the state in any form of navigation whatsoever in violation of the air traffic rules promulgated by the cabinet or the Federal Aviation Administration [(FAA)]. For enforcement purposes, cabinet personnel shall have access at all reasonable times to appropriate books, records, and logs of any person operating aircraft in the state.

KRS 183.100.

Appellants contend this statute cannot support a claim of wrongful termination in violation of public policy because it lacks a nexus to Justinic's employment, and the statute fails to lay out a well-defined public policy.

We have little doubt that KRS 183.100 has a nexus to Justinic's employment. The Supreme Court held that "discharging the employee for refusal to violate a law is . . . so contrary to public policy as to be actionable as wrongful discharge." *Hill v. Kentucky Lottery Corp.*, 327 S.W.3d 412, 422 (Ky. 2010).

Justinic legally had to comply with all state and federal regulations to fly the plane he was hired to pilot and the circuit court effectively instructed the jury as to stipulated facts and the law. KRS 183.100. It was the jury's right and role to determine: if Appellants instructed Justinic to fly a plane contrary to the statute's safety requirements; if Justinic was justified in delaying the flight to San Juan in the Caribbean because it was not safe; and if Appellants terminated Justinic's employment for refusing their instruction. That is effectively how the jury was instructed.[3]

---

[3] The applicable instruction said:

> Defendants Airtech, LLC, Ft. Mitchell Construction, LLC, and Columbia Sussex Corporation were Plaintiff Raymond F. Justinic's employer. Plaintiff was the pilot in command of the plane and was legally responsible for the safe operation of it. He had final authority as to the operation of the plane. Plaintiff alleges Defendants wrongfully terminated his employment in violation of public policy. In Kentucky, it is against public policy to terminate an employee because: (a) the employee refused to violate the law in the course of his employment; or (b) the employee exercised a right conferred by law.
>
> You will find for Plaintiff if you are satisfied by a preponderance of the evidence that:
>
> 1. Defendants asked Plaintiff to operate an aircraft in a careless or reckless manner so as to endanger the life or property of another;
>
> 2. Plaintiff refused to operate the aircraft;
>
> 3. Plaintiff's refusal was justified;
>
> 4. Defendants terminated Plaintiff's employment because he refused to operate an aircraft in an unsafe manner; and
>
> 5. Plaintiff sustained damages.

We cannot agree that the statute fails to outline a well-defined policy. This statute incorporates, by reference, all policies laid out by applicable Kentucky state agencies, as well as the federal FAA. Thus, this statute expresses Kentucky's public policy in favor of air safety. The circuit court was not the first to recognize this statute as an expression of Kentucky's public policy in favor of air safety. In *McGill v. DHL Airways, Inc.*, the Sixth Circuit said of the underlying lawsuit in question to that appeal:

> McGill's claim is actually for wrongful termination in violation of public policy. Kentucky law establishes a judicial exception to at-will employment for a discharge "contrary to a fundamental and well-defined public policy." *Boykins v. Housing Authority of Louisville*, 842 S.W.2d 527, 529 (Ky.1992). The public policy at issue here is found at KRS 183.100, which states that "No person shall operate any aircraft . . . in violation of the air traffic rules promulgated by the cabinet or the Federal Aviation Administration." This includes DHL's Mexico flight. Therefore, McGill claims that to the extent that DHL operated its aircraft without equipment mandated by the [Federal Aviation Regulations], it violated Kentucky's public policy favoring air safety evidenced by KRS 183.100 and to the extent that McGill's termination was due to this violation, his termination was wrongful.

*McGill v. DHL Airways, Inc.*, 12 F.App'x 247, 248 n.1 (6th Cir. 2001). "Kentucky courts are not bound by the holding of a federal court" but are not prohibited from considering the reasoning of those opinions. *Unifund CCR Partners v. Harrell*, 509 S.W.3d 25, 28 (Ky. 2017). When in our estimation that reasoning is consistent with our jurisprudence, we often adopt a like analysis.

"Whether a public policy is fundamental, well-defined, and evidenced by existing law is a question of law for the courts to decide." *Miracle v. Bell Cnty. Emergency Medical Services*, 237 S.W.3d 555, 558 (Ky. App. 2007) (citing *Grzyb*, 700 S.W.2d at 401). We agree, generally, with the Sixth Circuit's reasoning that there is a "Kentucky[] public policy favoring air safety evidenced by KRS 183.100[.]" *McGill*, 12 F.App'x at 248 n.1. Justinic alleged Appellants fired him because he refused to fly in unsafe conditions – a violation of Kentucky public policy favoring air safety. A jury considered the evidence and resolved the fact of his firing as being for that reason. With that fact established, the circuit court found the firing to be against public policy articulated in KRS 183.100. We find no legal error in that holding.

Next, Appellants claim the circuit court erred by denying their motion for a directed verdict as to Justinic's emotional distress damages because the proof did not show he suffered severe or serious distress or even approach the standard established in *Osborne v. Keeney*. 399 S.W.3d 1, 17 (Ky. 2012) (severe emotional injury "occurs where a reasonable person, normally constituted, would not be expected to endure the mental stress engendered by the circumstances of the case. Distress that does not significantly affect the plaintiffs [sic] everyday life or require significant treatment will not suffice."). The *Osborne* rule is inapplicable.

To be clear, Justinic did not allege a claim for negligent or intentional infliction of emotional distress. This is obvious from his complaint[4] and from the jury instructions identifying emotional distress and mental anguish only as a category of damages suffered. In such a case, the argument Appellants make about "this kind of weak evidence" is unavailing. This same unsuccessful argument was made to the Supreme Court in *Childers Oil Co., Inc. v. Adkins*, 256 S.W.3d 19 (Ky. 2008), *abrogated on other grounds by Nami Resources Company, L.L.C. v. Asher Land and Mineral, Ltd.*, 554 S.W.3d 323 (Ky. 2018).

In *Childers Oil*, the appellant argued:

> the jury award is excessive because Adkins has not shown that her embarrassment rose to the level of severe emotional distress required by the tort law. Childers may be right that the evidence does not bear out a claim for intentional infliction of emotional distress, but analyzing this jury verdict under that tort law is entirely incorrect. Adkins did not bring an action for IIED; rather she requested an instruction for compensatory damages . . . , which would include emotional distress.

*Id.* at 28. Justinic sought the same category of damages. What the Supreme Court said next is directly applicable to this case.

> Childers has argued correctly that the evidence supporting Adkins's claim for emotional distress is not strong. The only evidence specifically supporting the claim is Adkins's own testimony on the witness stand. However, unless the verdict bears no relationship to the evidence, it should not be set aside. The assessment of

---

[4] *See*, footnote 2, *supra*.

damages is a matter left in the hands of the jury, and their decision should be disturbed only in the most egregious circumstances.

*Id.* The verdict in Justinic's case does bear a relationship to the evidence. Therefore, denial of the directed verdict motion is consistent with *Childers Oil*. We will not set it aside.

Lastly, Appellants allege the court erred because Justinic produced no evidence of malice for purposes of punitive damages. We disagree.

Pursuant to KRS 411.184(2),[5] "[a] plaintiff shall recover punitive damages only upon proving, by clear and convincing evidence, that the defendant from whom such damages are sought acted toward the plaintiff with oppression, fraud or malice." KRS 411.184(2). "Such damages are given to the plaintiff over and above the full compensation for his injuries, for the purpose of punishing the defendant, of teaching him not to do it again, and of deterring others from following his example." *Hensley v. Paul Miller Ford, Inc.*, 508 S.W.2d 759, 762 (Ky. 1974) (citation omitted).

In accordance with the jury instructions, to receive punitive damages, Justinic had to present sufficient evidence supporting a reasonable inference in the

---

[5] In *Williams v. Wilson*, 972 S.W.2d 260 (Ky. 1998), the Kentucky Supreme Court held KRS 411.184(1)(c) unconstitutional. *Williams*, 972 S.W.2d at 269; *see also Berrier v. Bizer*, 57 S.W.3d 271, 283-84 (Ky. 2001) ("Although KRS 411.184(1)(c) was declared unconstitutional in *Williams v. Wilson*, . . . the opinion specifically did not purport to affect other provisions of the statute.").

minds of the jurors that Appellants' actions were motivated by hatred, ill will, or a spirit of revenge and caused him a tangible or intangible injury. He succeeded. We conclude there was substantial evidence to support that jury verdict. The circuit court did not err.

*Motion for a New Trial.*

Appellants claim they were entitled to a new trial for three reasons: (1) the jury instruction on wrongful termination "misrepresents the applicable law" (quoting *Sargent v. Shaffer*, 467 S.W.3d 198, 203-04 (Ky. 2015), *overruled on other grounds by University Medical Center, Inc. v. Shwab*, 628 S.W.3d 112 (Ky. 2021)); (2) Appellants were not permitted to "flesh out during closing argument the legal nuances that are not included within the language of the instruction" (quoting *Olfice, Inc. v. Wilkey*, 173 S.W.3d 226, 230 (Ky. 2005)); and (3) the circuit court wrongfully refused Appellants' proposed jury instruction to define serious emotional injury as, *inter alia*, "where a reasonable person, normally constituted, would not be expected to endure the mental stress engendered by the circumstances of the case." (Record at 504 (quoting without attribution *Osborne*, 399 S.W.3d at 17)).

Whether to grant a new trial under CR 59 lies within the circuit court's sound discretion. *Gibson v. Fuel Transp., Inc.*, 410 S.W.3d 56, 62 (Ky. 2013). That discretion to grant or deny such a motion is said to be quite broad and

"will not be interfered with by this court unless a manifest injustice has been done one of the parties." *Webster Cnty. v. Lutz*, 28 S.W.2d 966, 969 (Ky. 1930). Denying Appellant's motion for a new trial based on the aforementioned three arguments was well within the circuit court's discretion.

First, the wrongful termination instruction does not misstate the law. After expressing in lay terms the circuit court's legal ruling that KRS 183.100 expressed a public policy of air safety, it presented to the jury the proper choices of deciding facts that would establish or refute that the employer's termination of the employee violated that public policy. *See* footnote 3, *supra*.

Second, we do not agree that the circuit court deprived Appellants' counsel the opportunity to "flesh out" the nuances of that jury instruction. We examined the recording of Appellants' counsel's closing argument, the objection by Justinic's counsel, and the circuit court's ruling. To paraphrase Justinic's counsel, the circuit court did not prohibit a fleshing out of the instruction so much as it prevented Appellants' attempt through the "back door" of closing argument to qualify the instruction in a way rejected by the court as part of Appellants' proposed instruction.

Third, as for the argument the circuit court erred in rejecting Appellants' proposed instruction that would have overlayed the *Osborne v. Keeney* rule for establishing stand-alone IEED and NIED claims, we already explained,

*supra*, that "analyzing this jury verdict under that tort law is entirely incorrect." *Childers Oil*, 256 S.W.3d at 28. The *Osborne* standard simply does not apply, and it would have been error to qualify the instruction in this case as Appellants wanted.

Accordingly, the circuit court did not err when it denied Appellants' motion for a new trial.

## **CONCLUSION**

For the aforementioned reasons, we find no error and affirm.


ALL CONCUR.


| BRIEFS FOR APPELLANT: | BRIEF FOR APPELLEE: |
|---|---|
| Scott R. Thomas | Anthony J. Bucher |
| Steven A. Taylor | Barbara D. Bonar |
| Ft. Mitchell, Kentucky | Covington, Kentucky |