RENDERED:  JANUARY 15, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-1398-MR

TED D. MALONE                                           APPELLANT

|   |   |
|---|---|
| v. | APPEAL FROM JEFFERSON CIRCUIT COURT<br>HONORABLE SUSAN SCHULTZ GIBSON, JUDGE<br>ACTION NO. 12-CI-002968 |

JEFFERSON COUNTY
BOARD OF EDUCATION                                      APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CALDWELL, MAZE, AND MCNEILL, JUDGES.

MCNEILL, JUDGE:  Ted D. Malone ("Malone") appeals from orders of the

Jefferson Circuit Court granting summary judgment on his claims of breach of

contract, breach of implied covenant of good faith and fair dealing, fraudulent

inducement, tortious interference with a prospective advantage, state wage and

hour law violations, and wrongful discharge, as well as several discovery orders. Finding no error, we affirm.

Malone was employed by the Jefferson County Board of Education ("JCBE") as a special education teacher at Shawnee High School ("Shawnee") from 1989 until his resignation on May 1, 2011. His resignation was prompted by two incidents of alleged misconduct occurring in early 2011.

On January 10, 2011, Shawnee Assistant Principal Don Dillard ("Dillard") met with Malone about deficiencies in his students' alternate portfolios that are completed and submitted for state assessment. The portfolio entries were unorganized, some lacked dates, others were not graded, and some students had no entries whatsoever. Perhaps most concerning, the assessment lacked sufficient complexity to allow students to demonstrate proficient scores. Dillard instructed Malone to restart the portfolio process, provided sample portfolios, and set a series of deadlines and progress checks to ensure the alternate portfolios were timely completed and reflected the true abilities of the students.

However, when Malone submitted the portfolios for a final in-school review on March 28, 2011, they exhibited many of the same problems as before. Malone argued the portfolios were a work in progress and alleged Dillard's directive to restart the portfolio process violated state law. On April 15, 2011, Malone received a five-day suspension for his ongoing disorganization, disregard

of the testing code, and failure to follow administrative directives regarding the alternate portfolios.

The second incident occurred on April 11, 2011, four days prior to Malone's suspension, when Malone allegedly dispensed the wrong dosage of medication to a student. Several weeks prior, Malone had received an "Authorization to Give Prescription Medication" form for the student to begin receiving 1 mg of Valium on March 23, 2011, in addition to the student's current medication, Carbidopa-Levodopa. Additionally, on April 1, Malone received an email from Anna Maria Mayberry ("Mayberry"), the student's guardian and a licensed practical nurse, informing Malone of a doctor's order increasing the Valium dosage to 3 mg on beginning April 11, 2011.

However, Malone misread the email as ordering Valium administration to begin on that date, not merely the increased dosage. Consequently, Malone did not administer the Valium from March 23, 2011, the date of the authorization, to April 11, 2011, the date of the incident. It is unknown why Malone did not dispense the Valium prior to receiving the email.

On the day of the incident, Mayberry was at the school to insert a new feeding tube and assisted Malone in the process of administering the student's medicine. According to Mayberry's affidavit, Malone handed her what she believed to be 3 mg of Valium but was in fact three doses of Carbidopa-Levodopa.

-3-

Discovering the mistake, Mayberry attempted to remove the medicine from the feeding tube. Malone did not report the incident to school administrators. Following an investigation, Shawnee's principal recommended that Malone be terminated for his negligence. JCBE also reported the incident to the Education Professional Standards Board ("EPSB") pursuant to KRS[1] 161.120.

Facing termination, Malone, through the Jefferson County Teachers Association ("JCTA"), negotiated with JCBE to resign on April 29, 2011, in exchange for the removal of the performance evaluations and suspension letter from his personnel file. On April 25, 2011, Malone tendered a letter of resignation, effective May 1, 2011. Malone also notified school staff and parents of his students he was resigning.

On May 11, 2011, almost two weeks after resigning, Malone submitted to JCBE a "Notice of Intent to Retire," effective July 2011. Malone completed a Kentucky Teachers' Retirement System "Application for Service Retirement" and gave it to JCBE to complete Section IX-Certification by Employer. Therein, JCBE represented Malone had earned zero days of sick leave. The bottom of the section contained a certification which was completed and signed by a JCBE representative:

> I hereby certify that the employee named in this
> application has terminated his/her contract and the last

---

[1] Kentucky Revised Statutes.

date of performed duties is April 29, 2011. The employee requests retirement from the Kentucky Teachers' Retirement System in accordance with the provisions of the Kentucky Revised Statutes to begin on July 1, 2011. I further certify that the above information is accurate and complete to the best of my knowledge.

On May 31, 2011, Malone sent a letter to JCBE questioning why he did not receive any retirement benefits in the form of payment for accumulated sick days. JCBE responded that Malone was ineligible for the unused sick leave payout benefit extended to retirees because Malone had resigned, citing the JCTA labor agreement.

Pursuant to Article 27, Section C of the labor agreement between JCBE and JCTA:

> Upon retirement from the Jefferson County Public School District, a teacher shall receive thirty (30) percent of the teacher's unused accumulated sick leave as a cash payment (less appropriate deductions) up to a maximum equal to the teacher's accumulated sick leave on the thirtieth (30) year of credited service in the teacher's retirement systems. The cash payment shall be calculated by using the teacher's last year of service daily rate.

The heading of Section C contains a footnote qualifying that the section applies to "regular full-time teachers working on limited or continuing contracts and other full-time employees."

On May 25, 2012, Malone filed a complaint in the Jefferson Circuit Court alleging he was constructively discharged for "refus[ing] to comply with

illegal actions requested by his Vice Principal, with regard to state-mandated student portfolios." Malone further alleged JCBE breached the JCBE-JCTA labor agreement and the resignation agreement by failing to pay him for the unused sick days he was entitled to under the contract and reporting the allegations of his misconduct to the EPSB. The complaint asserted claims for breach of contract, breach of implied covenant of good faith and fair dealing, fraudulent inducement, tortious interference with a prospective advantage, state wage and hour law violations, and wrongful discharge.

Following a period of protracted discovery disputes, Malone moved for partial summary judgment on his wage and hour claim. JCBE made a counter-motion for partial summary judgment to dismiss the claim. The circuit court granted JCBE's motion and dismissed the claim. Subsequently, JCBE moved for summary judgment on the remaining claims, and the circuit court granted the motion. This appeal followed. Additional facts will be set forth below as necessary.

The standard of review on appeal of a summary judgment is whether the trial court correctly found there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law. CR[2] 56.03. "The record must be viewed in a light most favorable to the party opposing the

---

[2] Kentucky Rules of Civil Procedure.

motion for summary judgment and all doubts are to be resolved in his favor."

*Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476, 480 (Ky. 1991)

(citations omitted). "Because summary judgment involves only legal questions and

the existence of any disputed material issues of fact, an appellate court need not

defer to the trial court's decision and will review the issue *de novo*." *Lewis v. B &

R Corporation*, 56 S.W.3d 432, 436 (Ky. App. 2001) (citation omitted).

Malone advances six arguments in support of his contention that

summary judgment was improperly granted: 1) the circuit court erred in failing to

view evidence in the light most favorable to him; 2) the circuit court erred in

holding he is not entitled to sick leave payout pursuant to the parties' employment

contract or statute; 3) the circuit court erred in holding JCBE did not breach its

contract in reporting his alleged misconduct to the EPSB; 4) the circuit court erred

in failing to consider his declaration made pursuant to 28 U.S.C.[3] § 1746 in

response to the summary judgment motion; 5) the circuit court erred in granting

summary judgment on his fraudulent inducement claim; and 6) the circuit court

erred in failing to address JCBE's intentional destruction and withholding of

evidence.

Read together, these allegations appear to encompass every claim

asserted in Malone's complaint. Therefore, for conciseness, we will address them

---

[3] United States Code.

as we review the circuit court's grant of summary judgment as to each individual claim.

Turning first to the wage and hour law claim, Malone contends JCBE violated KRS 337.055, KRS 337.060(1) and KRS 337.010(1)(c)1 by not compensating him for 30% of his earned sick leave pursuant to the JCBE-JCTA labor agreement. KRS 337.055 provides in relevant part: "Any employee who leaves or is discharged from his employment shall be paid in full all wages or salary earned by him[.]" Further, KRS 337.060(1) states that "[n]o employer shall withhold from any employee any part of the wage agreed upon." Finally, KRS 337.010(1)(c)1 defines "[w]ages" as "any compensation due to an employee by reason of his or her employment, including salaries, commissions, vested vacation pay, overtime pay, severance or dismissal pay, earned bonuses, and *any other similar advantages agreed upon by the employer and the employee or provided to employees as an established policy*." (Emphasis added.)

Reading these statutes together, the circuit court correctly concluded that JCBE's failure to compensate Malone for his earned sick leave would constitute a violation of the wage and labor laws if Malone were entitled to such payment pursuant to the JCBE-JCTA labor agreement. However, the court went on to hold that "Malone is not eligible for the unused sick leave pay out benefits extended to retirees under Article 27, § C, of the JCBE-JCTA Labor Agreement as

-8-

a matter of law, since he was not a regular full-time teacher working on a limited or continuous contract when he gave his notice of his intent to retire." Thus, the court concluded there was no violation of statute, and JCBE was entitled to summary judgment. We agree.

"The interpretation of a contract, including determining whether a contract is ambiguous, is a question of law to be determined de novo on appellate review." *Kentucky Shakespeare Festival, Inc. v. Dunaway*, 490 S.W.3d 691, 695 (Ky. 2016) (citation omitted). "In the absence of ambiguity, a written instrument will be enforced strictly according to its terms, and a court will interpret the contract's terms by assigning language its ordinary meaning and without resort to extrinsic evidence." *Id.* at 694 (citation and internal quotation marks omitted).

"A contract is ambiguous if a reasonable person would find it susceptible to different or inconsistent interpretations." *Maze v. Bd. of Directors for Commonwealth Postsecondary Educ. Prepaid Tuition Tr. Fund*, 559 S.W.3d 354, 363 (Ky. 2018) (citation omitted). "The fact that one party may have intended different results, however, is insufficient to construe a contract at variance with its plain and unambiguous terms." *Id.* (citation omitted).

Article 27, Section C of the JCBE-JCTA labor agreement is clear and unambiguous. Pursuant to that section, teachers are entitled to 30% of their unused accumulated sick leave upon retirement. The agreement does not provide that

employees are entitled to accumulated sick leave upon resignation. It is undisputed that Malone resigned effective May 1, 2011, almost two weeks before he submitted his notice of intent to retire, signifying that he recognized resignation and retirement as separate actions.

Further, the heading to Section C contains a footnote qualifying its application to "regular full-time teachers working on limited or continuing contracts and other full-time employees." The agreement itself does not define "continuing contract"; however, KRS 161.720(4) provides that a "continuing service contract" is a contract for the employment of a teacher which remains in effect until the teacher "resigns or retires" or the "contract is terminated or suspended as provided in KRS 161.790 and 161.800[.]" Because Malone had already resigned, he was not "a regular full-time teacher[] working on [a] limited or continuing contract[]" when he gave his notice of intent to retire. Thus, as a matter of law, he was not entitled to the value of his accumulated sick leave pursuant to the plain terms of the agreement.

Likewise, summary judgment was also appropriate as to Malone's breach of contract claim and his claim for breach of implied covenant of good faith and fair dealing. In his complaint, Malone alleges that JCBE breached the JCBE-JCTA labor agreement as well as the resignation agreement negotiated by JCTA and entered into between Malone and JCBE.

"To prove a breach of contract, the complainant must establish three things: 1) existence of a contract; 2) breach of that contract; and 3) damages flowing from the breach of contract." *Metro Louisville/Jefferson Cty. Gov't v. Abma*, 326 S.W.3d 1, 8 (Ky. App. 2009) (citation omitted). As to the labor agreement, as held above, Malone was not entitled to accumulated sick leave pursuant to the terms of the agreement because he resigned prior to submitting his notice of intent to retire. Therefore, he cannot prove a breach of the agreement based on JCBE's refusal to compensate him.

Concerning the resignation agreement, Malone argues that JCBE breached the agreement by reporting the allegations of his misconduct to the EPSB. The resignation agreement, in its entirety, reads as follows:

> The Parties hereby agree:
>
> 1. Ted Malone will resign his position effective close of business April 29, 2011;
>
> 2. The Form E-2 and letter, referencing disciplinary action, will be removed from the personnel file;
>
> 3. This settlement is the complete resolution of all issues related to the subject of this memorandum of agreement and JCTA will not support any other grievance concerning this issue.

Malone interprets "this settlement is the complete resolution of all issues related to the subject of this memorandum of agreement" as JCBE's agreement it would not take any further action in relation to his misconduct.

Without considering the reasonableness of this interpretation, "contracts of public bodies, including boards of education, are made with reference to existing statutes and [] the applicable statutory provisions enter into the contracts by operation of law." *Bd. of Educ. of Perry Cty. v. Jones*, 823 S.W.2d 457, 459 (Ky. 1992).

KRS 161.120(2)(a) requires JCBE to send a written report to the EPSB concerning any teacher "who resigns from, or otherwise leaves, a position under threat of contract termination . . . or who otherwise may have engaged in any actions or conduct while employed in the school district that might reasonably be expected to warrant consideration for action against [a] certificate[.]" JCBE's compliance with this duty was not a breach of contract, and summary judgment as to this issue was properly granted.

Similarly, Malone argues that JCBE breached the covenant of good faith and fair dealing "by intentionally withholding critical information from Malone, and then . . . submitting false allegations of misconduct to the EPSB[.]" "Within every contract, there is an implied covenant of good faith and fair dealing, and contracts impose on the parties thereto a duty to do everything necessary to carry them out." *Farmers Bank & Tr. Co. of Georgetown, Kentucky v. Willmott Hardwoods, Inc.*, 171 S.W.3d 4, 11 (Ky. 2005) (citation omitted).

Malone essentially argues that by reporting his misconduct to the EPSB, JCBE did not do everything in its power to fulfill its promise that the

-12-

agreement would be "the complete resolution of all issues related to the subject of [his misconduct]." Malone, again, appears to interpret the resignation agreement as assuring him that JCBE would not take any further action against him. As held above, JCBE did not breach the agreement by reporting Malone's misconduct to the EPSB. That reporting obligation was part of the contract. As such, JCBE did not, and could not, breach the covenant of good faith and fair dealing by doing so. The circuit court properly granted summary judgment as to this claim.

Summary judgment was also appropriate as to Malone's fraudulent inducement claim. Malone argues that he relied upon JCBE's representation that he would be fired for his misconduct in administering medication to his student when he signed the resignation agreement. "In Kentucky, a party claiming harm resulting from fraud in the inducement must establish six elements of fraud by clear and convincing evidence as follows: a) material representation b) which is false c) known to be false or made recklessly d) made with inducement to be acted upon e) acted in reliance thereon and f) causing injury." *Bear, Inc. v. Smith*, 303 S.W.3d 137, 142 (Ky. App. 2010) (citing *United Parcel Service Co. v. Rickert*, 996 S.W.2d 464, 468 (Ky. 1999)).

Here, there is no evidence JCBE made any false representation to induce Malone to sign the agreement. Malone points to Mayberry's April 10, 2018 statement to JCBE that she was the one who technically delivered the medication

to the student.  Thus, Malone asserts that any allegation or reporting that it was he who administered the medicine is false.  This appears to be semantics.  Malone was responsible for preparing and administering the student's medication daily.  According to Mayberry's affidavit, it was Malone who prepared and handed the medicine to Mayberry, which she then gave the student.

In recommending that Malone be terminated, Shawnee Principal Keith Look observed

> Mr. Malone's negligence my [sic] omission is in violation of [Kentucky] statute.  His failure to follow JCPS procedures of reading labels repeatedly to assure the correct med goes in the correct dosage to the correct student put the student in severe danger.  His failure to report the error and to complete the form only when asked raises danger as well.

Further, the record shows that Malone had not been administering the student's Valium, as required, for several weeks.  Thus, Malone has not shown evidence supporting his claim of fraudulent inducement.

Turning to Malone's claim for tortious interference with a prospective business advantage, to succeed on such a claim, a plaintiff must prove:  "1) the existence of a valid business relationship or expectancy; 2) that the defendant was aware of this relationship or expectancy; 3) that the defendant intentionally interfered; 4) that the motive behind the interference was improper; 5) causation;

and 6) special damages." *Seeger Enterprises, Inc. v. Town & Country Bank & Tr. Co.*, 518 S.W.3d 791, 797 (Ky. App. 2017) (citation omitted).

Malone argues that he had a "valid business relationship or its expectancy" with respect to his retirement benefits and potential teaching opportunities elsewhere and that JCBE's actions "vis-à-vis the retirement benefits" and "in making intentionally false allegations to the EPSB" interfered with these expectations.

As held above, Malone was not entitled to receive sick leave payout, and there is no evidence JCBE made any false allegations to the EPSB. Malone's quibble about the meaning of "administer" does not create a genuine issue of material fact as to this or any other of his claims. Further, to prove tortious interference with a prospective business advantage, a party seeking recovery must show malice, meaning "intentional interference without justification." *PBI Bank, Inc. v. Signature Point Condominiums LLC*, 535 S.W.3d 700, 715 (Ky. App. 2016) (citation omitted). Malone cannot meet this burden because JCBE was statutorily required to report his misconduct to the EPSB. Therefore, summary judgment was properly granted.

Finally, summary judgment was also appropriate as to Malone's claim for wrongful discharge. "To establish a cause of action for wrongful discharge, an employee must show that the termination was contrary to public policy evinced by

-15-

a constitutional or statutory provision[4], or that the discharge directly resulted from the employee's refusal to violate the law during the course of his employment." *Greissman v. Rawlings & Assocs., PLLC*, 571 S.W.3d 561, 566 (Ky. 2019) (citing *Grzyb v. Evans*, 700 S.W.2d 399, 401 (Ky. 1985)).

We first point out that Malone was not "discharged," but instead negotiated his resignation with the assistance of the JCTA. Malone appears to recognize this fact, alleging instead that he was "constructively discharged" for refusing to "engage in illegal activities related to his students' portfolios." A constructive discharge occurs when "based upon objective criteria, the conditions created by the employer's action[s] are so intolerable that a reasonable person would feel compelled to resign." *Brooks v. Lexington-Fayette Urban County*, 132 S.W.3d 790, 807 (Ky. 2004) (citation omitted).

Here, there is no evidence that Malone's working conditions were so intolerable as to compel resignation; in fact, the evidence shows that Malone resigned to avoid being terminated for cause. Malone states in his sworn declaration that when given the option to resign in lieu of termination, he told Principal Look that he wanted to keep working. Based upon this admission, no

---

[4] JCBE argues that Malone's wrongful discharge claim fails as a matter of law because it is based on 703 Kentucky Administrative Regulations ("KAR") 5:080, a regulation, not a constitutional or statutory provision. For purposes of this appeal we will assume 703 KAR 5:080 qualifies as public policy for purposes of a wrongful discharge claim.

reasonable factfinder could conclude that Malone felt his workplace was so intolerable that he felt compelled to resign. Further, facing termination, Malone agreed to resign in exchange for a clean personnel file, allowing him to continue to teach elsewhere. This evidence again fails to support a claim for constructive discharge because it does not relate to work environment but instead shows Malone's resignation was a calculated decision based upon a potential benefit.

Even assuming Malone was constructively discharged, Malone's claim for wrongful discharge still fails because he cannot show that he was asked to violate the law or, at the time of his resignation, had a reasonable, good-faith belief that he had been asked to do so. In an unpublished Opinion, a panel of this Court held that "an employee claiming wrongful discharge due to a refusal to violate the law must show an affirmative request to him/her by the employer to violate the law." *Welsh v. Phoenix Transp. Servs., LLC*, No. 2007-CA-001231-MR, 2009 WL 2475206 (Ky. App. Aug. 14, 2009) (ordered not to be published) (Ky. Mar. 10, 2010).

Malone cannot meet this requirement. While Malone argues JCBE's instructions to manipulate and tamper with student portfolios violated 703 KAR 5:080, the Kentucky Department of Education ("KDE") determined otherwise. After investigating Malone's allegations, the KDE concluded that

> since the re-administration of the baseline assessment
> probes was approved by KDE staff and based on

evidence that several of the baseline probes Mr. Malone originally administered did not align with the grade level assessment standards for the assessed content areas, there is not enough evidence to support a violation of 703 KAR 5:080.

In *Greissman*, 571 S.W.3d 561, our Supreme Court, at least implicitly, acknowledged that a wrongful discharge claim for refusal to violate the law could stand if an employee had a "reasonable, good faith belief" the request was illegal. *Id.* at 568. Again, Malone cannot show that he had a reasonable, good faith belief that he had been asked to violate the law, at least not at the time of his resignation.

While Malone alleges that he contacted Dan Pike, another JCBE employee, as well as Kevin O'Hair from KDE, and was informed that manipulating student portfolios would be illegal, in an email provided as an exhibit to Malone's response to the summary judgment motion, O'Hair states he informed Malone on April 6, 2011, that altering the portfolios under the circumstances as they existed was permitted. Thus, viewing the evidence in the light most favorable to Malone, at the time of his resignation, Malone's belief that he was being asked to violate 703 KAR 5:080 was no longer reasonable or in good faith. Thus, it could not have reasonably informed his decision to resign.

Malone also argues the circuit court erred in failing to consider his declaration made pursuant 28 U.S.C. § 1746 to rebut JCBE's summary judgment motion. While the circuit court concluded the document was not affirmative

-18-

evidence because it was unverified, the court proceeded to address Malone's arguments as if supported by affirmative evidence. Therefore, we decline to address this issue.

Lastly, Malone argues the circuit court erred in failing to address JCBE's intentional destruction and withholding of evidence. During discovery, Malone repeatedly alleged that JCBE violated both state law and school policy concerning record retention. Malone filed numerous motions to compel, most of which were granted by the circuit court. In his notice of appeal, Malone lists six different discovery orders he is appealing from. However, they are not addressed in his brief. It is unknown, therefore, specifically what relief he seeks. Importantly, Malone does not state how any alleged missing evidence is relevant or how he has been prejudiced by its absence.

"[I]t is well-settled that a trial court has broad discretion in resolving disputes in the discovery process, and we will not disturb a discovery ruling absent an abuse of that discretion." *Blue Movies, Inc. v. Louisville/Jefferson Cty. Metro Gov't*, 317 S.W.3d 23, 39 (Ky. 2010) (citation omitted). Because Malone has not identified any specific error of the circuit court with regard to discovery, we decline to find it abused its discretion.

For the foregoing reasons, the orders of the Jefferson Circuit Court are affirmed.

ALL CONCUR.

BRIEFS FOR APPELLANT:

James M. Morris
Tyler J. Morris
Lexington, KY

BRIEF FOR APPELLEE:

C. Tyson Gorman
Sean G. Williamson
Louisville, KY