GENERAL TELEPHONE COMPANY OF
KENTUCKY, Appellant,

v.

Alma BLEVINS, Next Friend of Bobby Blevins, a Person under 21 Years of age, Fred Hicks, David Alderman, Individually, and David Alderman, d/b/a the Alderman Company, and John Riggs, Appellees.

Court of Appeals of Kentucky.

March 31, 1967.

Petition for Rehearing Dismissed
May 25, 1967.

Charles S. Sinnette, Yager & Sinnette, Ashland, for appellant.

William T. Walton, MacDonald & Walton, Flemingsburg, James Clay, Thomas Burns, Morehead, Charles Landrum, Jr., Lexington, for appellees.

CULLEN, Commissioner.

General Telephone Company of Kentucky appeals from a judgment for $3,929.01 in favor of Bobby Blevins, an infant (who sued through his mother as next friend), as damages for personal injuries sustained by Bobby through the alleged negligence of General. In the court below Bobby also had sought recovery against Fred Hicks, David Alderman and John Riggs, and General had cross-claimed against them for indemnity or contribution. The trial court did not instruct on indemnity or contribution and the jury found for these three defendants on Bobby's claim, wherefore the judgment dismissed the claims against them. General has named Hicks, Alderman and Riggs as appellees but does not seek any relief as concerns them, and Bobby has not cross-appealed to seek relief against them, so the judgment as to them will be affirmed.

General's claims of error are that it was entitled to a directed verdict and that the instructions were erroneous.

Bobby's injuries resulted from an unusual sequence of events. There was evidence (though contradicted in several respects) that this is what happened: General owned a telephone pole which stood in the edge of the yard of a dwelling in a rural area. The pole had been used in rendering telephone service to the dwelling but the dwelling had not been occupied for a year before the accident and the lead-in or service wire from the pole to the dwelling had been taken down. However, a "drop line" was left in place running from the telephone pole across the highway to a connection on a REA pole which carried high voltage electric power lines. The latter pole stood in the yard of the Blevins' home.

Fred Hicks had purchased the house in whose yard the telephone pole stood, and he planned to move it to another location, by loading and carrying it on a "lowboy" trailer. In surveying the situation he concluded that the telephone pole would stand in the way of moving the house. Accordingly he called General's local office and discussed the problem with the manager. The latter said that he would send a crew to remove the pole, but if the crew did not arrive by the planned moving hour of 2 p. m. Hicks could "knock the pole over" himself. Hicks reminded the manager that there was a wire running from the pole across the highway but the manager said that it was a "dead" wire and not to worry about it.

The lowboy unit, owned by David Alderman and operated by John Riggs, arrived at the scene around 2 p. m. No telephone crew had appeared so at Hicks' direction Riggs knocked down the telephone pole by backing a tractor against it. Riggs testified that he did not notice the wire either before or after knocking down the pole. However conditions subsequently developing indicated that the wire broke from the pole when it was knocked down and whipped across the highway upon or in close proximity to the high voltage wire on the REA pole.

There were no indications of any trouble for several hours but around 8 p. m. Bobby Blevins, who had been watching television in his home and noticed a "roll and flicker" in the set, went out in his yard with the purpose of rotating the television antenna pole. It was dark and had been raining. He observed a wire hanging down near the house which he assumed was the lead-in wire from the antenna. He picked

up the wire and was severely shocked and burned. Subsequent investigation indicated that the telephone drop line was lying across the electric wires and it was either one end of that wire, or one end of one of the electric wires that had burned in two and fallen to the ground as a result of being shorted by the drop wire, that Bobby had picked up.

■ General maintains that it was entitled to a directed verdict because there was no proof of negligence on its part. However, we think there was proof of negligence in the evidence that General, with knowledge that a wire on its pole was attached to a pole carrying a high voltage line, authorized an inexperienced person to knock down its pole, without taking precautions to guard against the drop wire's coming in contact with the high voltage line.

■ It is a well-settled rule of the common law that a person who authorizes use of a dangerous instrument or article in such a manner or under such circumstances that he has reason to know that it is likely to produce injury, is responsible for injuries proximately resulting therefrom. See Shell v. Town of Evarts, 296 Ky. 602, 178 S.W.2d 32; 38 Am.Jur., Negligence, sec. 85, p. 743. Here the drop wire was so situated as to be an extremely dangerous article to handle, and General authorized its being handled or dealt with in a manner from which injury might be anticipated to occur. We conclude that General was not entitled to a directed verdict.

■ General's second contention is that the instructions were erroneous, and in this we agree. The jury found against General under Instruction No. 3, which authorized a finding against General "if you believe from the evidence that the defendant General Telephone Company by leaving its drop line attached to the telephone pole on the premises where the house

was removed, if it did so, created a dangerous situation and that as a direct and proximate result of said negligence, if any, on the part of the defendant Telephone Company the plaintiff was injured * * *." This instruction authorized the jury to find against General from the mere fact of its having left the drop wire in position, even though the jury did not believe Hicks' contradicted testimony that General's manager gave him authority to knock down the pole, wire and all. We think this instruction is erroneous because the mere leaving of the wire in position was not and could not have been a proximate cause of the accident to Bobby Blevins. The wire, if left alone, was not a source of danger, and General was not chargeable with anticipation that some unauthorized person would knock the pole down and break the wire under tension so as to cause it to whiplash. We think the drop wire's position was merely a condition and not a cause. Dixon v. Kentucky Utilities Company, 295 Ky. 32, 174 S.W.2d 19, 155 A.L.R. 150.

■ The trial court gave an instruction, which the jury did not follow, on the issue of *agency*. It is our opinion that this instruction was improper because the evidence did not warrant a finding that Hicks, Alderman and Riggs knocked down the pole for and on behalf of General. On the contrary, the evidence was that they knocked it down on their own behalf simply with permission of General.

Upon another trial, if the evidence is substantially the same, the issue of liability of General should be submitted under an instruction predicating liability upon a finding that General authorized Hicks to knock the pole down. (There would be no issue of whether General exercised reasonable care to prevent injury after having given such authorization, because admittedly General did nothing.)

The judgment as against General Telephone Company is reversed, with directions

for further proceedings in conformity with this opinion; to the extent that the judgment exonerates the other defendants it is affirmed.

All concur.