RENDERED: JUNE 27, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-0278-MR

CHELSEY NAPPER; CHELSEY
NAPPER, MOTHER OF MINOR, B.E.;
CHELSEY NAPPER, MOTHER OF
MINOR, Z.F.; AND CODY
ETHERTON                                                    APPELLANTS

APPEAL FROM JEFFERSON CIRCUIT COURT
v.            HONORABLE JULIE KAELIN, JUDGE
ACTION NO. 22-CI-004751

KELLY HANNAH GOODLETT                                       APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: THOMPSON, CHIEF JUDGE; ECKERLE AND A. JONES, JUDGES.

JONES, A., JUDGE: This appeal arises from the Jefferson Circuit Court's order

granting a motion to dismiss filed by Appellee Kelly Goodlett ("Goodlett")

pursuant to CR[1] 12.02. Appellants Chelsey Napper ("Napper"), Cody Etherton, and Napper on behalf of her minor children, B.E. and Z.F., filed suit alleging emotional and physical injuries stemming from the execution of a search warrant on a neighboring apartment. Although Appellants were not the subject of the warrant, they allege that bullets fired during the execution of the warrant entered their apartment. Appellants also allege that Goodlett participated in drafting and securing the warrant, despite not being present during the warrant's execution.

The circuit court dismissed the complaint, concluding that all claims were barred by the statute of limitations and, in the alternative, failed to state a valid legal claim. Upon review, we conclude that none of the asserted causes of action present a legally cognizable theory of relief under Kentucky law. Accordingly, we affirm the circuit court's dismissal.

## II. BACKGROUND

In late 2019 and early 2020, the Louisville Metro Police Department ("LMPD") was conducting a narcotics investigation involving Jamarcus Glover, a suspected drug trafficker. As part of that investigation, LMPD Detective Joshua Jaynes sought a search warrant for the apartment of Breonna Taylor, a former girlfriend of Glover. Jaynes prepared an affidavit in support of the warrant, and Goodlett, who was then an LMPD officer, assisted him in finalizing it.

---

[1] Kentucky Rules of Civil Procedure.

According to Goodlett's subsequent federal plea and the allegations in Appellants' complaint, she and Jaynes knowingly included multiple falsehoods in the affidavit. Specifically, Goodlett was concerned that Jaynes's draft lacked recent or direct evidence linking Taylor's apartment to Glover's suspected drug activities. To address this, she personally inserted a paragraph stating that Jaynes had verified through law enforcement databases that Taylor's apartment was Glover's current home address. Both officers allegedly knew this statement was false.

The affidavit also stated that a United States Postal Inspector had confirmed Glover was receiving packages at Taylor's apartment. Goodlett later admitted that she knew this to be untrue. In fact, both officers had been informed by the United States Postal Service that no such packages had been delivered. The search warrant was obtained as a no-knock warrant, based in part on the misrepresentation that Glover was expected to be present at the apartment. In reality, according to Appellants' complaint, the officers anticipated that Taylor would be home alone.

The warrant was executed in the early morning hours of March 13, 2020. Goodlett was not present. Upon hearing the officers outside the apartment, Kenneth Walker, who was staying with Taylor that night, believed a break-in was occurring and fired a single shot through the door, striking an officer. In response,

several officers discharged their weapons. LMPD officer Brett Hankison fired ten rounds blindly through a covered sliding glass door and window. Some of those rounds entered the neighboring apartment occupied by Appellants Chelsey Napper and Cody Etherton. Napper, who was six and a half months pregnant with her second child, Z.F., was home with her young son, B.E. Etherton was allegedly struck in the face by flying debris. Appellants allege physical and emotional injuries. Taylor was fatally shot during the encounter.

Public awareness of the affidavit's inaccuracies began on May 16, 2020, when media outlets reported that a United States Postal Inspector had publicly disclaimed the affidavit's statement regarding package deliveries to Taylor's address. On August 4, 2022, Goodlett was charged by information in federal court with conspiracy and obstruction relating to the falsification of the warrant affidavit and the attempted cover up. She pleaded guilty on August 23, 2022.

Appellants previously filed a federal lawsuit on March 4, 2021, against officers involved in the warrant's execution, including Hankison. *Napper v. Hankison*, 617 F. Supp. 3d 703 (W.D. Ky. 2022).[2] That action did not include claims against Goodlett. On September 13, 2022, following Goodlett's federal

---

[2] The federal district court dismissed all defendants except Hankison. *Id.*

-4-

indictment and plea, Appellants filed the present suit in Jefferson Circuit Court. The complaint named Goodlett in her individual and official capacities and also asserted claims against the Louisville Metro Government under theories of vicarious liability.[3]

Appellants alleged that Goodlett's misconduct in falsifying the affidavit led directly and foreseeably to the execution of the warrant and their resulting injuries. The complaint asserted claims for violations of Section 10 of the Kentucky Constitution, intentional torts, negligence *per se*, and common-law negligence. Appellants also contended that the factual basis for their claims was not reasonably discoverable until the federal investigation and indictment became public.

Goodlett moved to dismiss pursuant to CR 12.02. On March 6, 2024, the Jefferson Circuit Court granted the motion, concluding that all claims were barred by the one-year statute of limitations in KRS[4] 413.140(1)(a) and, in the alternative, that the allegations failed to establish legal causation. This appeal followed.

---

[3] Appellants later filed an amended complaint that alleged claims against Goodlett only.

[4] Kentucky Revised Statutes.

## II. STANDARD OF REVIEW

A motion to dismiss for failure to state a claim under CR 12.02(f) presents a pure question of law. Accordingly, we review the circuit court's ruling *de novo* and afford no deference to its conclusions. *Gregory v. Hardgrove*, 562 S.W.3d 911, 913 (Ky. 2018) (quoting *Fox v. Grayson*, 317 S.W.3d 1, 7 (Ky. 2010)). In conducting our review, we must accept as true all facts alleged in the complaint and draw all reasonable inferences in the light most favorable to the non-moving party. *Marshall v. Montaplast of N. Am., Inc.*, 575 S.W.3d 650, 651 (Ky. 2019). Dismissal is proper only if the pleading party would not be entitled to relief under any set of facts which could be proved in support of the claim. *Morgan v. Bird*, 289 S.W.3d 222, 226 (Ky. App. 2009). The question before us is purely legal: assuming the facts alleged are true, do they give rise to a viable claim for relief? *Fox*, 317 S.W.3d at 7.

## III. ANALYSIS

As noted above, the circuit court dismissed the complaint on two alternative grounds: that all claims were barred by the statute of limitations and, alternatively, that the complaint failed to state a valid legal claim. "When a judgment is based upon alternative grounds, the judgment must be affirmed on appeal unless both grounds are erroneous." *Milby v. Mears*, 580 S.W.2d 724, 727 (Ky. App. 1979). Thus, if we agree that Appellants' first amended complaint fails

-6-

to state any cognizable claims upon which relief may be granted, we must affirm the circuit court's dismissal order regardless of whether we agree with its conclusion on the statute of limitations issue.[5]  Accordingly, we proceed directly to consider whether Appellants' first amended complaint states a legally cognizable claim for relief.

Appellants' first amended complaint (Record at 1163-1214), filed on April 20, 2023, asserts six counts.  Counts I and II allege violations of Section 10 of the Kentucky Constitution, asserting Appellants were subjected to an unreasonable seizure and unnecessary force, and that Goodlett failed to intervene to prevent those constitutional violations.  Count III pleads common-law intentional torts, including assault, trespass, and false imprisonment.  Count IV asserts a negligence claim.  Count V alleges additional violations of Sections 1, 2, 10, and 14 of the Kentucky Constitution and includes a negligence *per se* theory. Count VI seeks punitive damages.

For ease of analysis, we group the constitutional claims – Counts I, II, and V – together, including the negligence *per se* theory asserted in Count V,

---

[5]  We do note, however, KRS 413.170(1) expressly tolls the limitations period for individuals under a legal disability, including infancy.  Under that statute, "[i]f a person entitled to bring any action mentioned in KRS 413.090 to 413.160 . . . was, at the time the cause of action accrued, an infant . . . the action may be brought within the same number of years after the removal of the disability . . . allowed to a person without the disability to bring the action after the right accrued."  It is undisputed that both B.E. and Z.F. were minors at the time of the March 13, 2020 incident.

which is premised on alleged constitutional violations.  We then address the common-law intentional tort claims (Count III), the standalone negligence claim (Count IV), and the request for punitive damages (Count VI).

**Constitutional-Based Claims**

Appellants allege that Appellee's conduct violated Sections 1, 2, 10, and 14 of the Kentucky Constitution.  Counts I and II assert that Appellants were subjected to an unreasonable seizure and the use of unnecessary force in violation of Section 10, and that Goodlett failed to intervene to prevent those alleged constitutional violations.  Count V reiterates the constitutional claims and additionally asserts a negligence *per se* theory based on the same alleged violations.

However, Kentucky does not recognize a private right of action for damages arising from alleged violations of its Constitution.  There is no judicially or legislatively created private cause of action (analogous to a federal 42 U.S.C.[6] § 1983 action) which enables an individual to seek damages for violations of this section of our Constitution.  *See St. Luke Hosp., Inc. v. Straub*, 354 S.W.3d 529, 534 (Ky. 2011).  As recently as 2020, the Kentucky Supreme Court reaffirmed its holding in *Straub* explaining that recognition of a new cause of action for violation of the state constitution is unnecessary because "adequate remedial alternatives"

---

[6] United States Code.

already exist.  *A.H. v. Louisville Metro Government*, 612 S.W.3d 902, 914 (Ky. 2020).

While Appellants nominally request a declaratory judgment, they do not seek any prospective or equitable relief based on such a declaration.  Their complaint seeks retrospective relief in the form of money damages.  Because Kentucky courts have not recognized a damages remedy for state constitutional violations – and no equitable or injunctive relief is meaningfully sought – Counts I, II, and V fail as a matter of law.  *Miller v. Administrative Office of Courts*, 361 S.W.3d 867, 876 (Ky. 2011) (explaining that a suit based on constitutional violations is proper only where prospective relief is sought against the state).

Appellants' reliance on a negligence *per se* theory in Count V also fails.  Under Kentucky law, a negligence *per se* claim must be grounded in the violation of a *statute*, not a constitutional provision.  *Straub*, 354 S.W.3d at 534 (Negligence *per se* is a legal doctrine whereby a statutory standard of care is substituted for the common law standard of care.).  Because the Kentucky Constitution is not a statute, its alleged violation cannot serve as the basis for a negligence *per se* claim.  *Id.*

Accordingly, the circuit court properly dismissed Counts I, II, and V.

## Intentional Torts

In Count III of the first amended complaint, Appellants allege that Goodlett is liable for the intentional torts of assault, trespass, and false imprisonment. These claims rest on an unusual and expansive theory of causation: that Goodlett, by knowingly contributing to the procurement of a warrant through false information, effectively "used" Officer Hankison as a dangerous instrumentality to commit intentional acts against Appellants. They liken Goodlett's role to that of a person who releases a known hazard into a populated area and thereby assumes responsibility for its foreseeable consequences. *See General Tel. Co. of Ky. v. Blevins*, 414 S.W.2d 899, 902 (Ky. 1967) (negligence case).

However, Kentucky law does not support imposing liability for intentional torts – such as assault, trespass, or false imprisonment – on a third party who neither intended nor directly committed the allegedly tortious act. While Kentucky has recognized that in certain situations an employer may be held vicariously liable for the intentional acts of its employees, Hankison was not Goodlett's employee. *See Patterson v. Blair*, 172 S.W.3d 361 (Ky. 2005). At most, they were merely coworkers. This is an insufficient basis to hold them liable for one another's intentional torts. *See Robertson v. Sichel*, 127 U.S. 507, 515-16, 8 S. Ct. 1286, 1290, 3 L. Ed. 203 (1888) ("A public officer or agent is not

responsible for the misfeasances or position wrongs, or for the nonfeasances or negligences or omissions of duty, of the subagents or servants or other persons properly employed by or under him, in the discharge of his official duties."); *Ashcroft v. Iqbal*, 556 U.S. 662, 677, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) ("Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct.").

Intentional tort liability requires proof of intent to cause the specific harm alleged, or at minimum, that the actor acted with substantial certainty that harm would result. *Banks v. Fritsch*, 39 S.W.3d 474, 480 (Ky. App. 2001). The complaint does not allege that Goodlett herself intended to commit or facilitate these specific torts against Appellants. Rather, it alleges that Goodlett's earlier misconduct – drafting a false affidavit – set in motion a chain of events that culminated in Hankison's use of force.

This form of attenuated, indirect liability is incompatible with the elements of intentional torts. Even where an act creates foreseeable risk, that alone is insufficient to establish intent. *See Vitale v. Henchey*, 24 S.W.3d 651, 659 (Ky. 2000). Foreseeability, while a relevant concept in negligence law, is not a substitute for the specific intent required to sustain a claim of assault, trespass, or false imprisonment. Kentucky law does not permit intent to be inferred from generalized risk or downstream consequences. Instead, a plaintiff must allege facts

demonstrating that the defendant either intended the harm or acted with substantial certainty that the harm would occur.

Moreover, Kentucky does not recognize a theory under which a public official may be held liable for the intentional torts of another merely because her earlier misconduct enabled or contributed to a chain of events that later caused harm. The "dangerous instrumentality" cases cited by Appellants involve direct control over physical instrumentalities or inherently dangerous objects – not the discretionary acts of independent public officials responding to a complex and fluid situation.

To the extent Appellants attempt to invoke the doctrine of *res ipsa loquitur* or strict liability by analogizing the execution of the warrant to an ultrahazardous activity, those theories are incompatible with claims sounding in intentional tort. Kentucky law permits strict liability for abnormally dangerous activities only in narrow circumstances, typically where the defendant had exclusive control over the dangerous instrumentality. *See Rockwell Int'l Corp. v. Wilhite*, 143 S.W.3d 604, 619 (Ky. App. 2003); *Randall v. Shelton*, 293 S.W.2d 559, 560-62 (Ky. 1956). Goodlett had no such control over Officer Hankison's conduct. The execution of a warrant – while potentially volatile – is not classified as an abnormally dangerous activity under Kentucky law. Nor does it trigger strict

liability simply because harm occurred.  These principles underscore the incompatibility of Appellants' theory with established Kentucky tort doctrine.

Because the complaint fails to plead facts showing that Goodlett acted with the requisite intent to injure Appellants or that she directly committed or authorized the acts at issue, the circuit court properly dismissed Count III.

**Negligence**

Count IV of the first amended complaint asserts a claim for negligence.  Appellants allege that Goodlett owed them a duty to conform her conduct to LMPD policies and the general duty of ordinary care, and that her alleged misconduct in procuring a search warrant breached these duties and set in motion a series of events that culminated in their injuries.  They cite *Lewis v. B & R Corporation*, 56 S.W.3d 432, 436-37 (Ky. App. 2001), for the basic proposition that a negligence claim requires proof of duty, breach, and a causal connection between the breach and the plaintiff's injury.

Even assuming Appellants could establish a duty and breach – issues the trial court did not reach – the negligence claim fails as a matter of law due to a lack of legal causation.  Under Kentucky law, causation has two components: cause-in-fact and proximate (legal) cause.  *Patton v. Bickford*, 529 S.W.3d 717, 729 (Ky. 2016).  The concept of proximate cause serves as a limit on liability where the causal chain between the defendant's conduct and the plaintiff's injury is

-13-

too attenuated or speculative to impose legal responsibility. *See NKC Hospitals, Inc. v. Anthony*, 849 S.W.2d 564, 568 (Ky. App. 1993).

Appellants' negligence theory rests on the claim that Goodlett's misrepresentations in the search warrant affidavit led to the warrant's approval and thus "set in motion" the actions of Hankison and other LMPD officers during its execution. But this theory fails to account for a critical distinction in Kentucky law: that negligent conduct does not give rise to liability where the harm results from the independent, intentional, or criminal actions of a third party unless those actions were a foreseeable and natural consequence of the defendant's breach. *See Bruck v. Thompson*, 131 S.W.3d 764, 766 (Ky. App. 2004) (holding that theft and reckless driving by third party were a superseding cause, severing liability); *Howard v. Spradlin*, 562 S.W.3d 281, 286 (Ky. App. 2018) (same, where arson by unknown third party caused injury).

By Appellants' own account, Goodlett did not participate in the warrant's execution and had no control over how or when it was served. The causal chain was interrupted by multiple discretionary decisions made by other officers – namely, the decision to serve the warrant late at night, the manner of entry, and the response to Kenneth Walker's gunfire. These independent decisions constitute superseding causes that break the chain of proximate causation under Kentucky law. *Pile v. City of Brandenburg*, 215 S.W.3d 36, 42-43 (Ky. 2006)

-14-

(holding that conduct of third-party prisoner was not a superseding cause where officer's negligent control of cruiser was a substantial factor; by contrast, here Goodlett had no control).

Appellants' reliance on *Gonzalez v. Johnson*, 581 S.W.3d 529 (Ky. 2019), is misplaced. There, the Kentucky Supreme Court allowed a negligence claim to proceed against a deputy sheriff whose high-speed pursuit was found to be a substantial factor in causing injury to an uninvolved third party. But the Court's holding was grounded in the deputy's continued and active participation in a dynamic event – specifically, a pursuit that did not merely create risk but maintained and intensified it. *Id.* at 532-33. Here, Goodlett's involvement ended well before the warrant was executed, and there is no allegation that she directed, controlled, or participated in the tactical decisions leading to Appellants' injuries. Thus, even if Goodlett's conduct could be characterized as negligent, the events leading to the alleged harm – Walker's belief that a break-in was occurring, his firing at the door, and the responsive gunfire from Hankison – were too attenuated to satisfy the element of proximate cause. Appellants' allegations fail to establish that Goodlett's conduct was a substantial factor in the injuries suffered. As such, Count IV was properly dismissed.

**Punitive Damages**

In Count VI, Appellants seek punitive damages based on the same factual allegations underlying their dismissed constitutional, tort, and negligence claims. However, Kentucky law does not recognize a stand-alone cause of action for punitive damages. Punitive damages are a form of relief, not an independent claim. *Wittmer v. Jones*, 864 S.W.2d 885, 890-91 (Ky. 1993). Because all of Appellants' underlying claims fail as a matter of law, there is no viable claim upon which punitive damages may be based. Accordingly, the trial court properly dismissed Count VI.

### IV. CONCLUSION

For the reasons set forth above, we conclude that because none of the claims asserted in Appellants' first amended complaint state a cognizable legal theory under Kentucky law, dismissal was proper. We therefore affirm the judgment of the Jefferson Circuit Court.

ALL CONCUR.


BRIEF FOR APPELLANTS:

Jeffrey A. Sexton
Louisville, Kentucky

BRIEF FOR APPELLEE:

Joseph C. Klausing
Caroline K. Bruenderman
Louisville, Kentucky