Robert McCOWN

v.

GRAY KENTUCKY TELEVISION, INC., d/b/a WYMT–TV; Gray Communications Systems, Inc.; and Ernestine Cornett, Individually.

No. 2007–CA–001947–MR.

Court of Appeals of Kentucky.

Oct. 31, 2008.

Discretionary Review Denied by Supreme Court Oct. 21, 2009.

Daniel F. Dotson, Whitesburg, KY, for appellant.

Randall Scott May, Hazard, KY, Robert H. Buckler, Rebecca Williams Shanleve, Atlanta, GA, for appellees.

Before ACREE and VANMETER, Judges; HENRY,[1] Senior Judge.

## OPINION

ACREE, Judge.

Robert McCown appeals from orders of the Perry Circuit Court granting a partial directed verdict and a partial summary judgment in favor of Gray Kentucky Television, Inc. McCown was dismissed from his job by Gray after refusing to sign a chemical screening consent and release form as required of all employees. He sued, claiming wrongful termination and asking for punitive damages. We affirm the trial court's orders granting judgment in favor of Gray.

Prior to his termination, McCown was employed in the technical department of WYMT, a television station owned by Gray. In 1998, Gray adopted a policy designed to prevent substance abuse by its employees. As part of Gray's new policy, employees were required to sign a chemical screening consent and release form. Gray set a deadline of November 20, 1998, for all employees to sign and return the forms relating to the new substance abuse policy.

When McCown failed to do so, his direct supervisor was asked to speak to him about his failure to sign and return the forms. McCown refused to sign the forms. The station's Vice President and General Manager, Ernestine Cornett, then met with McCown who informed her that he would like to contact an attorney with regard to the release. Cornett agreed and gave him three weeks to reconsider signing the release. McCown never contacted Cornett to inform her of any advice obtained from an attorney. However, he did tell other employees at WYMT that he had perused the internet and found a Kentucky statute he believed created a legal conflict with the language of the release. Meanwhile, Cornett consulted both the attorney who drafted the release and Gray's general counsel to obtain legal advice regarding the validity of the release under Kentucky law. After reassurance by Gray's counsel, Cornett gave McCown a final opportunity to sign the release. When he failed to do so, he was fired.

McCown filed a complaint against Gray alleging he was wrongfully terminated from employment in violation of Kentucky law. Eventually, he amended his complaint to request punitive damages, claiming that Gray acted with oppression and malice. At trial, the court granted a directed verdict in Gray's favor on the wrongful termination claim and granted

---

1. Senior Judge Michael L. Henry sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and KRS 21.580.

summary judgment for Gray on the issue of punitive damages. This appeal followed.

■ McCown argues first that the trial court granted Gray's motion for a directed verdict contrary to the standard set forth in Kentucky Rules of Civil Procedure (CR) 50.01. That rule allows "the [trial] court [to] direct a verdict where there is no evidence of probative value to support the opposite result." *Gibbs v. Wickersham*, 133 S.W.3d 494, 496 (Ky.App.2004). In ruling as it did, the trial court correctly recognized that Kentucky follows the doctrine of at-will employment, permitting an employer to fire employees "for good cause, for no cause, or for a cause that some might view as morally indefensible[.]" *Grzyb v. Evans*, 700 S.W.2d 399, 400 (Ky.1985) (citation omitted). However, the *Grzyb* Court did adopt the position of the Michigan Supreme Court in *Suchodolski v. Michigan Consolidated Gas Co.*, 412 Mich. 692, 316 N.W.2d 710 (1982), recognizing two exceptions in which discharging an employee is so contrary to public policy that it becomes actionable. First, an employee's termination can be actionable where it is based upon the employee's refusal to perform an illegal act as a condition of employment. Second, we recognize a cause of action for wrongful termination where an employee is fired for exercising a legal right conferred by a statute. *Grzyb*, 700 S.W.2d at 402. McCown claims this second exception applies here.

■ McCown claims his termination violated Kentucky Revised Statute (KRS) 336.700 which reads, in relevant part, as follows:

(2) Notwithstanding any provision of the Kentucky Revised Statutes to the contrary, no employer shall require as a condition or precondition of employment that any employee or person seeking employment waive, arbitrate, or otherwise diminish any existing or future claim, right, or benefit to which the employee or person seeking employment would otherwise be entitled under any provision of the Kentucky Revised Statutes or any federal law.

In its order granting a directed verdict, the trial court stated that McCown failed to present evidence of any right which he would be required to give up if he signed the release. The Kentucky Supreme Court has previously stated that wrongful discharge will only be found where it is "contrary to a fundamental and well-defined public policy ... evidenced by a constitutional or statutory provision." *Grzyb*, 700 S.W.2d at 401. Further, the determination of whether the public policy claimed by the discharged employee meets these criteria is a question of law. *Id.* In this case, the trial court found that the release was limited in application and did not encompass waiver of any clearly defined rights. Thus, McCown's discharge for refusing to sign the release did not violate public policy.

But McCown interprets the language of Gray's release as forcing him to waive potential claims arising out of any injury sustained during the process of obtaining a specimen or sample for testing. According to McCown, if he suffered such an injury, for example becoming infected with a blood-born disease, he would be unable to pursue either workers' compensation benefits or a personal injury claim due to his having signed the release. The language which McCown found objectionable reads as follows:

I hereby release and hold harmless the Company, the medical review officer or other medical professionals, the laboratory, their employees, agents and contractors from liability arising from this request to furnish this or any specimen or sample, the testing of the specimen or sample, and any decisions made con-

cerning my application for employment or my continued employment, based upon the results of the tests.

The trial court concluded, as a matter of law, that the language of the release did not require McCown to waive the protections of the workers' compensation statute. As noted by the trial court, the release covered only claims arising from the request to furnish a sample, the testing of samples, and any adverse employment decision based on the test results. The release did not address or require the release of any claims arising out of the actual taking of samples.

The Kentucky Supreme Court has previously determined that a release which waives liability for injury must contain very specific elements.

> Specifically, a preinjury release will be upheld only if (1) it explicitly expresses an intention to exonerate by using the word "negligence;" or (2) it clearly and specifically indicates an intent to release a party from liability for a personal injury caused by that party's own conduct; or (3) protection against negligence is the only reasonable construction of the contract language; or (4) the hazard experienced was clearly within the contemplation of the provision.

*Hargis v. Baize,* 168 S.W.3d 36, 47 (Ky. 2005) (citation omitted). The release which Gray required its employees to sign does not contain any of the elements of a valid preinjury release. There is no mention of negligence, nor does the release purport to indemnify Gray in the event that an employee suffers a personal injury due to the drug testing procedure. Protection against liability for negligence is not the only reasonable construction of the language. A reasonable interpretation of the language in the release is that it protected Gray from claims by any employee who experienced adverse employment consequences after an incorrect positive drug or alcohol test result. Further, nothing in the language of the release indicates that it contemplated an employee's personal injury resulting from testing. In fact, Gray agrees that employees who sign the release retain the right to seek workers' compensation benefits or to pursue a claim for personal injury against the testing facility in the event they suffer an injury while providing a sample or specimen.

McCown failed to correctly identify any right clearly granted by statute or constitution which would be waived by the portion of the release to which he objects. Thus, he is unable to persuade this Court that Gray violated KRS 336.700(2) by requiring its employees to sign the release. Since he did not offer any evidence that he was fired for refusing to violate a law or as retaliation for exercising a legally protected right, the trial court properly found that there was "no evidence of probative value to support" his claim that his firing violated public policy. *Gibbs,* 133 S.W.3d at 496. Consequently, the trial court acted properly in directing a verdict in favor of Gray on the issue of wrongful termination.

McCown also argues that the trial court wrongfully granted Gray's motion for summary judgment on his claim for punitive damages and its motion *in limine* to exclude evidence of the Kentucky Unemployment Insurance Commission's decision regarding his application for unemployment benefits. Because we conclude that the trial court's decision granting Gray's motion for directed verdict regarding the wrongful termination issue was correct, this opinion need not reach the remaining grounds raised in McCown's appeal. For the foregoing reasons, the judgment of the trial court is affirmed.

ALL CONCUR.