RENDERED: MARCH 13, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2025-CA-0601-MR

ELLEN SULLIVAN                                              APPELLANT

                 APPEAL FROM PULASKI CIRCUIT COURT
v.                 HONORABLE TERESA WHITAKER, JUDGE
                 ACTION NO. 23-CI-00486

BROADENING HORIZONS, INC.;
AMANDA TROXTELL, IN HER
CAPACITY AS COORDINATOR FOR
BROADENING HORIZONS, INC.;
AND KAREN WHITAKER, IN HER
CAPACITY AS PRESIDENT AND
DIRECTOR OF BROADENING
HORIZONS, INC.                                  APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE: COMBS, ECKERLE, AND MOYNAHAN, JUDGES.

ECKERLE, JUDGE: Appellant, Ellen Sullivan ("Sullivan"), seeks relief from an

order of the Pulaski Circuit Court granting summary judgment to Appellees,

Broadening Horizons, Inc. ("Broadening Horizons"), Executive Director Karen

Whitaker ("Whitaker"), and Coordinator Amanda Troxtell ("Troxtell").  After careful review, we affirm.

## I.  Factual and Procedural History

In 2017, Sullivan contracted with Broadening Horizons as a family home provider under the Medicaid Supports for Community Living ("SCL") waiver program.  It is undisputed that the contract identifies the relationship as one of an independent contractor agreeing to provide care within the guidelines and regulations governing that program.  By early 2022, Sullivan had three participants in her home through individual placement agreements with Broadening Horizons.

The underlying claims in this case arise out of a medication error that occurred in May of 2022.  The parties agree that Sullivan's job included filling, picking up, and administering medications to the participants in accordance with their physicians' orders and Broadening Horizons' internal policies.  They also agree that Sullivan had received yearly retraining on these duties, which included required steps to verify, administer, and document the medication administered accurately and in compliance with state and federal regulations.  Broadening Horizons retained control over financial accounts for participants and paid pharmacy bills on their behalf.

Appellees and Sullivan offer competing explanations for the underlying cause of the medication error, but there are a number of facts on which

the parties do agree.  First, all concede that Sullivan switched her participants'

prescriptions to the Sav-Rite Pharmacy in Somerset in March of 2022.  This act fell

within her discretion to do as a family home provider.  Second, they also

acknowledge that the balances for the prescriptions filled on the accounts of

Sullivan's three participants were not paid in March, April, or the first three weeks

in May of 2022.[1]  Third, participant B.P. had a prescription refill for cetirizine

("Zyrtec") due on May 13, 2022, one day before he received his last remaining

dose from the previous prescription filled on April 14, 2022.  This prescription was

not acquired on May 13, 2022.[2]  Fourth, the parties concede that participant B.P.

did not receive any doses of Zyrtec for eight days until the medication was

retrieved and administered on May 23, 2022.

Significant disagreement exists regarding the communication between

Sullivan and Broadening Horizons during those eight days.  In her deposition

testimony, Sullivan asserts that she spoke daily with Troxtell, who managed the

family home providers for Broadening Horizons, and that Sullivan had conveyed

that the lack of payment had resulted in a hold from the pharmacy on her

participants' medications.  However, Troxtell insisted in her deposition that she had

---

[1] The cause of this failure to pay the required bills is the subject of significant deposition testimony and speculation by all parties, but it is ultimately not material to the claims at issue in this case.

[2] The cause of the failure to obtain the medication that day is also hotly contested by the parties, with each alleging wrongdoing by the other.

not understood that there was an issue in obtaining the medication from the pharmacy, and that she did not know that the participant had not been receiving his medication. She testified that she believed the problem rested with the prescription, and she counseled following up with the prescribing provider.

Regardless of these disputed facts, the parties agree that Sullivan eventually picked up all prescriptions for her participants on May 23, 2022, and she informed Executive Director Whitaker of the issue on the following day after encountering her in the parking lot at Broadening Horizons. The sequence of events that occurred after this report is the subject of the underlying tort claims in this case.

First, Appellees confirmed with the pharmacy that there were outstanding balances that had not been paid. However, the pharmacy stated that no prescriptions were considered to be on hold at that time and noted that Sullivan had picked up all the medications prior to payment of the outstanding bills.[3] Invoices from the pharmacy confirm that the bills were not due until May 27, 2022. The letter from Sav-Rite Pharmacy confirms that its procedure would be to refuse to fill

---

[3] At the request of Broadening Horizons, Kimberly Windham, the owner and manager of Sav-Rite Pharmacy in South Somerset, prepared a letter dated May 31, 2022, detailing the pharmacy's account of the medication issue and the pharmacy technician's recollections of interactions with Sullivan and the staff of Broadening Horizons. *See* Appellant's Brief Tab 3.

any further medications in June if the bill had not been paid by that date; but the May prescriptions could still be picked up prior to payment.

After learning of this information, Broadening Horizons opened an investigation into the reported medication error. Kristopher Godby ("Godby"), the Program Director of Broadening Horizons, made necessary notifications to the participant's guardian and case manager before submitting required reports to Adult Protective Services ("APS") and the Department of Community Based Services ("DCBS") as required for any instances of suspected abuse, neglect, or exploitation of a participant. In deposition testimony offered on behalf of Broadening Horizons, Godby explained that one of the required reports classified the medication error as a "critical" incident under the regulations.[4] With the assignment of a critical incident, Godby testified that he and Whitaker determined that all of Sullivan's participants would need to be removed pursuant to Broadening Horizons' policies to ensure the safety of the participants.[5]

---

[4] Exhibit C of the Motion for Summary Judgment includes copies of the reports filed with APS and DCBS for the participants in Sullivan's home. This includes a "Risk Mitigation and Incident Report" that details the steps taken to protect the other participants who had no known medication errors at that time.

[5] Exhibit D of the Motion for Summary Judgment documents Broadening Horizons' policies and procedures in the event of suspected abuse, neglect, or exploitation. These include reporting mandates, investigation requirements, and safety of participants during the pendency of the investigation process.

Although APS declined to pursue the medication error further, Broadening Horizons conducted its own internal investigation as part of the mitigation efforts reported to DCBS. Because of the number of missed doses involved in the medication error, Broadening Horizons determined that Sullivan had been negligent in her care of B.P., and that she would no longer be approved to care for participants with complex medication needs. As a result, none of the three participants would be allowed to return to her home through Broadening Horizons.

When Sullivan did not receive any communications about the investigation within the 45-day window that Broadening Horizons had established for sending results, she signed a contract with another SCL provider. She never returned to work for Broadening Horizons, and her contract was never renewed. One of the three participants did ultimately return to her care through the new SCL provider. The guardians of the other two participants declined to follow her or return their participants to her care.

Sullivan filed suit alleging a number of tort claims against Broadening Horizons, as well as Whitaker and Troxtell in their capacities as Executive Director and Coordinator. After completing discovery and depositions of all parties, the Appellees moved for summary judgment on all claims. The Circuit Court held oral arguments on the motion, which it eventually granted. Sullivan made a motion to

alter, amend, or vacate the order, which the Circuit Court denied. This appeal followed.

## II. Standard of Review

Because this is an appeal from an order granting summary judgment, we review the Circuit Court's conclusions *de novo* and without deference. *Hammons v. Hammons*, 327 S.W.3d 444, 448 (Ky. 2010) (citations omitted). "On appellate review of the trial court's grant of summary judgment, we must determine whether the record, examined in its entirety, shows there is 'no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.'" *Philadelphia Indem. Ins. Co, Inc. v. Tryon*, 502 S.W.3d 585, 587 (Ky. 2016) (citing Kentucky Rules of Civil Procedure 56.03).

"Determination that a fact is material or immaterial rests on the substantive law's identification of which facts are critical and which facts are irrelevant." *Kearney v. Univ. of Ky.*, 638 S.W.3d 385, 397 (Ky. 2022) (citations omitted). "The inquiry should be whether, from the evidence of record, facts exist which would make it possible for the non-moving party to prevail. In the analysis, the focus should be on what is of record rather than what might be presented at trial." *Welch v. Am. Publ'g Co. of Ky.*, 3 S.W.3d 724, 730 (Ky. 1999). Summary judgment is improper unless it would be "impossible for the respondent to produce

evidence at the trial warranting a judgment in his favor and against the movant."

*Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476, 483 (Ky. 1991).

### III. Analysis

Sullivan asserts that material questions of fact exist that make summary judgment inappropriate. Accordingly, we must consider each of Sullivan's claims individually to determine whether summary judgment was proper after reviewing the substantive law at issue for each claim.

### 1. Claim for Retaliation Under Kentucky Revised Statutes ("KRS") 216B.165

After reviewing the evidence in the light most favorable to Sullivan as the non-moving party, the Circuit Court held that Sullivan could not state a claim for retaliation on two grounds. Primarily, that Court held that Sullivan failed to prove that Broadening Horizons was a healthcare facility subject to the statute. As the basis of her argument, Sullivan contends that the descriptor of a "family care home" offered in 907 Kentucky Administrative Regulations ("KAR") 20:041 covers substantially and more appropriately the same types of services provided by those who contract with Broadening Horizons. Sullivan also argues that the fact that the SCL waiver program is governed by the reporting requirements in KRS Chapter 209 does not bar it from being governed by KRS Chapter 216B as well. However, this assertion obscures the fact that KRS 216B.015(13) explicitly applies to a "health care facility or service *licensed under this chapter*" (emphasis added).

Principles of statutory construction require us "to give effect to the intent of the General Assembly." *Jefferson Co. Bd. of Educ. v. Fell*, 391 S.W.3d 713, 718 (Ky. 2012) (citations omitted).

> We derive that intent, if at all possible, from the language the General Assembly chose, either as defined by the General Assembly or as generally understood in the context of the matter under consideration . . . . We presume that the General Assembly intended for the statute to be construed as a whole, for all of its parts to have meaning, and for it to harmonize with related statutes.

*Id.* at 718-19.

Reviewing KRS 216B.165 as a whole, the plain language of the statute limits its application to health care facilities and services that are licensed under that chapter. Broadening Horizons is not so licensed. Instead, the legislature established the SCL waiver program with KRS 205.6317 and instructed the Cabinet of Health and Family Services to promulgate regulations in accordance with the federal requirements of the program. Those regulations include specific definitions for a SCL provider and a family home provider, and the requirements to certify for each are different from the legislature's definition of a "family care home" in KRS Chapter 216B. *See* 907 KAR 1:145 and 12:010. They do not

require licensure for either under KRS Chapter 216B, and Sullivan has offered no proof of licensure other than the asserted plain reading of the statute.[6]

In addition to the failure to prove that Broadening Horizons and Sullivan were covered by KRS 216B.165, Sullivan also failed to seek relief under KRS 446.070 to recover damages for a violation of a state statute where no penalty or forfeiture is imposed by the statute. Because the pleading failed to seek appropriate relief, the Circuit Court correctly noted that Sullivan would be unable to recover even in the event that the statute could have been applied. For both of these reasons, summary judgment was proper as a matter of law on Sullivan's retaliation claim.

## 2. Claim for Wrongful Discharge

Sullivan alleges that Appellees should be liable for wrongful discharge on the grounds that her contract was terminated as retaliation for reporting the medication error that she alleges was caused by Appellees' failure to pay the outstanding pharmacy bills. In reviewing this claim, the Circuit Court properly reviewed the elements for wrongful discharge under Kentucky law:

> "An employee has a cause of action for wrongful discharge when the discharge is contrary to a fundamental and well-defined public policy as evidenced by existing law . . . . The public policy must be

---

[6] Sullivan's deposition testimony actually acknowledges this distinction. She testified that she had previously been licensed as a family care home by the State but that she had "sent back" the license many years prior to certifying as a family home provider.

> evidenced by a constitutional or statutory provision. An employee cannot be fired for refusing to violate the constitution or a statute. Employers will be held liable for those terminations that effectuate an unlawful end." *Firestone Textile Co. Div., Firestone Tire & Rubber Co. v. Meadows*, 666 S.W.2d 730, 731 (Ky. 1983).

(Appellant's Brief Tab 1 at 6.)

Appellees assert that Sullivan's contract was never actually terminated and counter her assertions that the removal of her participants acted as a constructive termination. However, for the purpose of summary judgment, the Circuit Court properly reviewed the claim in the light most favorable to Sullivan and proceeded to review the evidence under the assumption that Sullivan had actually been terminated.

At every level of the proceedings, Sullivan has asserted that the appropriate test to determine her status as an employee would be to extend the "economic realities" test adopted by the Kentucky Supreme Court for disputes under the Kentucky wage and hour laws and for workers' compensation proceedings. *Mouanda v. Jani-King Int'l*, 653 S.W.3d 65 (Ky. 2022) (adopting the economic realities test for wage and hour disputes); *Oufafa v. Taxi, L.L.C.*, 664 S.W.3d 592 (Ky. 2023) (extending its use to workers' compensation proceedings). In her Appellant and Reply Briefs, Sullivan again urges that her status as an employee is a question of fact that should be submitted to a jury under the economic realities test.

-11-

After reviewing the elements articulated in *Firestone*, the Circuit Court concluded that Sullivan was not an employee based on KRS 67.750(4), which provides that a person classified as an independent contractor under the Internal Revenue Code shall not be considered an employee. Based on the available discovery, primarily the contract between Broadening Horizons and Sullivan designating the intent for the parties to have the relationship that an independent contractor would, we agree with the Circuit Court that Sullivan was an independent contractor. Ultimately, though, we do not need to reach the question of Sullivan's status as an employee or independent contractor, because she has also failed to assert proof of the second requirement set forth in Firestone that the discharge be contrary to a fundamental and well-defined public policy.

In *Firestone*, the Kentucky Supreme Court adopted the Wisconsin Supreme Court's holding that "[t]he determination of whether the public policy asserted is a well-defined and fundamental one is an issue of law and is to be made by the . . . court." *Firestone*, 666 S.W.2d at 733. Our Supreme Court expanded on this holding in *Hill v. Kentucky Lottery Corp.*, 327 S.W.3d 412 (Ky. 2010), noting that *Firestone* established the following requirements for a wrongful discharge claim under Kentucky law: "1) The discharge must be contrary to a fundamental and well-defined public policy as evidenced by existing law. 2) That policy must be evidenced by a constitutional or statutory provision. 3) The decision of whether

the public policy asserted meets these criteria is a question of law for the court to decide, not a question of fact." *Id.* at 420-21 (citing *Firestone*, 666 S.W.2d at 731).

The Court in *Hill* explained that it had held previously that the only situations in which discharging an at-will employee would be so contrary to public policy as to be actionable despite the absence of "explicit legislative statements prohibiting the discharge" would be: "1) Where the alleged reason for the discharge of the employee was the employee's failure or refusal to violate a law in the course of employment; or 2) When the reason for the discharge was the employee's exercise of a right conferred by well-established legislative enactment." *Id.* at 421-22 (citing *Grzyb v. Evans*, 700 S.W.2d 399, 402 (Ky. 1985)).  Subsequent cases offer examples of fundamental and well-defined policy such as: authorizing a labor union to represent an employee under the collective bargaining statute (*Pari-Mutuel Clerks' Union v. Ky. Jockey Club*, 551 S.W.2d 801 (Ky. 1977)); filing a workers' compensation claim (*Firestone*, 666 S.W.2d 730); and refusing to offer false testimony on behalf of an employer during a legal proceeding (*Hill*, 327 S.W.3d 412; *Northeast Health Mgmt., Inc. v. Cotton*, 56 S.W.3d 440 (Ky. App. 2001)).

Sullivan alleges that the public policy element of her wrongful discharge claim is her protected report of the medication error under KRS 216B.165.  However, as discussed above, this statute does not apply to Broadening

Horizons or the SCL waiver program. Thus, it cannot satisfy the requirements for a specific legislative statement. Sullivan does not identify any other statute or facts that suggest that one of the exceptions identified in *Hill* would apply here. There is no evidence that Broadening Horizons instructed Sullivan to break the law in any way. Rather, the evidence showed that it based its own actions following the confirmed medication error on attempts to comply with Kentucky and federal laws governing the SCL waiver program.

Sullivan's argument that her report of the missed medication should be considered public policy under the more generalized whistleblower statutes is similarly unpersuasive. Although Sullivan reported the missed payments to Whitaker as Executive Director, she also reported her own errors in medication administration. These mistakes resulted in one participant's failing to receive required prescription medication for more than one week. Pursuant to the regulations and Broadening Horizons' policies, failing to administer prescribed medication for multiple days is itself an error and does not require showing that the participant suffered any severe negative effects from the error.

Based on the regulations and relevant policies governing Broadening Horizons, Appellees removed the participants from Sullivan's home in response to her failure to follow up with the appropriate staff members when she believed that she could not pick up the prescribed medication. It is the very act of the removal

-14-

of the participants that Sullivan asserts constituted her constructive termination.

However, the determination to remove them from the home pursuant to state and

federal guidelines cannot realistically be considered counter to well-established

public policy. Thus, this claim must also fail as a matter of law.

## 3. Claim for Tortious Interference with a Business Relationship

In reviewing Sullivan's claim for tortious interference with a business

relationship, the Circuit Court identified the six-part test required to establish the

claim under Kentucky law. The Circuit Court described the applicable law as

follows:

> First, "The existence of a valid business relationship or expectancy." Second, "That the defendant was aware of this relationship or expectancy." Third, "That the defendant intentionally interfered" with the business relationship. Fourth, "That the motive behind the interference was improper." Fifth, the defendant's conduct was in proximity with the interference, similar to an element of causation. Finally, the court will examine whether special damages are in order. *PBI Bank, Inc. v. Signature Point Condos, LLC.*, 535 S.W.3d 700, 715 (Ky Ct. App. 2016); *CMI, Inc. v. Intoximeters, Inc.*, 918 F. Supp. 1068 (W.D. Ky. 1995). The court has been clear that to prevail on this claim, a plaintiff would have to show the defendant acted with malice or "significantly wrongful conduct." In other words, there must be some kind of intentional interference without justification on the part of the defendant for this claim to be successful. *PBI Bank, Inc.* at 715.

(Appellant's Brief Tab 1 at 6-7.)

While listing the six elements, the Circuit Court nonetheless did not clearly articulate the ways in which Sullivan failed to meet each part of the test. Instead, the Circuit Court offered a series of facts that it concluded failed to meet the requirements. Regardless, the Circuit Court reached the correct result, as we will detail below.

Sullivan argues that Appellees Troxtell and Whitaker's conduct interfered with her business relationships with Broadening Horizons, the individual participants placed in her home, and potential future employers who might be hesitant to hire her due to the reports filed with DCBS. Specifically, she argues that the first two prongs of the six-part test are met by the existence of her independent contractor agreement with Broadening Horizons. She claims that Whitaker and Troxtell interfered with that agreement sufficiently to meet parts three through five of the test. We are unpersuaded.

Troxtell and Whitaker cannot be considered to have interfered with Sullivan's relationship with Broadening Horizons, because they committed all alleged conduct while acting in their capacities as its agents. Under Kentucky law, "[a]gents of a party to a contract who act within the scope of their employment cannot interfere with that party's contract." *Harstad v. Whiteman*, 338 S.W.3d 804, 814 (Ky. App. 2011). Thus, as a matter of law, Sullivan cannot succeed on her claim of tortious interference with a business relationship.

-16-

Sullivan also alleges in her Reply Brief that the interference with her business activities was the initial removal of the three participants from her home, which she argues was intended to terminate Sullivan and protect Broadening Horizons from adverse action from the state. As she argues, "Whether their interference was 'improper' and motivated by a desire to deflect responsibility or preserve reputation rather than participant safety is a factual question[,] and Appellant was denied the opportunity to present her evidence of such and her theory before a jury." (Reply Brief at 5-6.)

Sullivan raises the possibility of improper motives of Troxtell and Whitaker in an attempt to establish element four of the *PBI Bank* test. As stated above, this effort fails because she cannot meet the other elements as a matter of law. Regardless, the alleged interference involves mandated reporting, required investigation, and necessary acts to protect the welfare of the SCL participants in Sullivan's home. Whether Appellees might also have harbored some other and even improper motive is irrelevant because all of the acts of alleged interference were required reports or agency policy in response to an admitted critical medication error. Where the Appellees were bound by regulations to report and address medication errors, it follows that they cannot be found liable for an alleged tort that results from legally-mandated compliance. Any contrary ruling would disincentivize reporting and render it perilous. Therein lies the reasoning of the

*PBI Bank* Court's holding that some intentional interference is not tortious where it is made with "justification." *PBI Bank*, 535 S.W.3d at 715. It necessarily follows that Appellees are justified in compliance with mandatory reporting and investigation.

Finally, Sullivan asserts that Troxtell and Whitaker harmed her future employment prospects by reporting her to DCBS for the medication error that she attributes to their own failure to pay the pharmacy bill in a timely manner. However, again Sullivan has failed to offer evidence that the Appellees' conduct actually interfered with her ability to find future employment or resume placement with the removed participants through another SCL provider. As the Circuit Court observed, Sullivan testified that she had established contracts with multiple other SCL providers as a family home provider after leaving Broadening Horizons, and one of the guardians did approve the participant's return to her care through another agency. Accordingly, this assertion of tortious interference also fails. None of these alleged interferences satisfies all parts of the *PBI Bank* test, even with the facts construed in the light most favorable to Sullivan as the party opposing summary judgment.

## 4. Claim for Intentional Infliction of Emotional Distress

After reviewing the record, the Circuit Court concluded that Sullivan had failed to meet the required elements for a claim of intentional infliction of

emotional distress. The Court applied the four elements set forth in *Craft v. Rice*, 671 S.W.2d 247 (Ky. 1984), to establish this claim under Kentucky Law:

> First, the wrongdoer's conduct must be intentional or reckless. The court states, "This element is satisfied where the wrongdoer had the specific purpose of inflicting emotional distress," or if the wrongdoer knew it was likely that emotional distress would result from his actions. Second, "the conduct must be so outrageous and intolerable that it offends the generally accepted standards of decency . . . ." The court specifically attempts to limit the use of [intentional infliction of emotional distress] claims here. Third, there must be a "causal connection between the wrongdoer's conduct and the emotional distress." Lastly, the emotional distress must be severe. A plaintiff must demonstrate severe mental stress or emotional injury acknowledged by medical or scientific experts. *Osborne v. Keeney*, 399 S.W.3d 1 (Ky. 2012).

In its analysis, the Circuit Court relied primarily on findings that Sullivan failed to provide any proof that Broadening Horizons' actions were committed for the purpose of causing emotional distress; and that she had not actually experienced severe emotional distress. We agree.

As a SCL provider, Broadening Horizons established guidelines to respond to medication errors as required by state and federal regulations. *See* 907 KAR 12:010. The report of the error, removal of SCL participants from Sullivan's home during an investigation, and ultimate decision not to allow those participants with complex medication needs back into her home are each in line with all of those policies. Sullivan has offered no evidence to suggest that Broadening

Horizons had any discretion to refrain from reporting or taking necessary steps once the report had been made.

Turning to Whitaker and Troxtell, even assuming Sullivan's contention that they intentionally used Sullivan's failure to administer medication to deflect from the lack of payment on the pharmacy account, Sullivan fails to satisfy the other elements of her claim. The alleged "outrageous and intolerable" conduct in this case is the notification of the medication error and removal of the SCL participants during the investigation, notifications that are compelled in their ordinary course. *Craft*, 671 S.W.2d at 250-51.

In her deposition testimony, Sullivan also alleges wrongdoing in the failure of Broadening Horizons to communicate the outcome of the report to Adult Protective Services and DCBS or her internal investigation within the 45-day window given to her at the time of removal. Ultimately, though, and again, her allegations describe behavior that is not only appropriate but required by state regulations and Broadening Horizons' own policies on abuse, neglect, and exploitation.

Finally, the Circuit Court correctly noted that Sullivan failed to present evidence of severe emotional distress. Although Sullivan asserts that this ultimate issue should have been one for expert testimony at trial, she has failed to articulate any evidence of alleged harm that could form the basis for a finding of

severe emotional distress. (Appellee Brief at 15 (citing Sullivan Deposition at 201)). Other than heart problems, which she testified in her deposition had been present prior to the incidents at issue in this case, she noted no objective symptoms or treatment that would establish this claim. Expert testimony cannot correct this deficiency.

**5. Concert of Action Between Troxtell and Whitaker**

As the final claim considered by the Circuit Court, Sullivan alleged a concert of action between Troxtell and Whitaker in their roles as Coordinator and Executive Director when they proceeded to report Sullivan's medication error without acknowledging Broadening Horizons' failure to pay the outstanding pharmacy bills.

The Circuit Court cited *Farmer v. Newport*, 748 S.W.2d 162 (Ky. App. 1988), which lists out the elements for a claim of Concert of Action borrowed from the RESTATEMENT (SECOND) OF TORTS § 876 (1979):

> For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he (a) does a tortious act in concert with the other or pursuant to a common design with him, or (b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself, or (c) gives substantial assistance to the other in accomplishing a tortious result and his own conduct separately considered[] constitutes a breach of duty to the third person.

As the Circuit Court explained, "To prevail on this claim, one would need to act with another, know that the other's conduct was causing harm and give substantial assistance to him, or cause harm himself while giving assistance to another." (Appellant Brief Tab 1 at 8.) The Circuit Court held that Sullivan had not shown any evidence that Troxtell and Whitaker worked in concert with one another to cause her harm when they reported the medication error and followed the required procedures for notifying the proper parties and conducting an internal investigation. On review, Sullivan has failed to establish that the Appellees committed any tortious act or breached a duty owed to her.

As Sullivan established, Appellees acted in response to the confirmed failure to administer a medication to a program participant for eight days. While there is strenuous disagreement about whose conduct caused the delay in obtaining the medication from the pharmacy, it is undisputed that the medication was not administered for eight days. Based on Godby's deposition testimony, the DCBS portal classified the incident as critical due to the cumulative effect of multiple missed medication doses. All of the depositions from Broadening Horizons' employees confirm that it is agency policy to treat all medication errors the same, though they acknowledged that it is unlikely that the invoice for the medication would have been overlooked if it had been for a controlled substance, such as a prescribed narcotic or mental health medication.

Assuming, *arguendo*, that Sullivan did report the pharmacy dispute to Troxtell, and that she was informed that the medication could not be picked up without payment, it is still undisputed that she did not follow up with any other member of Broadening Horizons staff until May 23 or 24 despite knowing her participant had missed multiple days of a prescribed medication. The lapsed medication would still require a report to be filed, and Sullivan would remain the responsible party under her contract with Broadening Horizons that places her in charge of providing care in accordance with the SCL program regulations. Accordingly, these facts do not support Sullivan's quest to overturn the grant of summary judgment on this claim as a matter of law.

## IV. Conclusion

Based on the foregoing, we affirm the Circuit Court's grant of summary judgment in favor of Broadening Horizons, Whitaker, and Troxtell.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Sarah E. Cooley
Masten Childers, III
Justin S. Peterson
Kellie M. Collins
Lexington, Kentucky

BRIEF FOR APPELLEES

Katherine J. Hornback
Lexington, Kentucky